JAMES HOCHBERG (HI Bar No. 3686)
ATTORNEY AT LAW, LLLC
700 Bishop St., Ste. 2100, Honolulu, HI 96813
Telephone: (808) 256-7382
E-mail: jim@jameshochberglaw.com

HARMEET DHILLON (Pro Hac Vice)
MARK P. MEUSER (Pro Hac Vice)
GREGORY R. MICHAEL*
DHILLON LAW GROUP
177 Post Street, Suite 700
San Francisco, CA 94108
Telephone: (415) 433-1700
E-mail: harmeet@dhillonlaw.com
*(Application for Admission pro hac vice forthcoming)

Counsel for Plaintiffs

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HOLLY CARMICHAEL; TIMOTHY AARON CARMICHAEL; BROOKE MCGOWAN; and RUSSELL HIRSCH; <br><br> Plaintiffs, <br><br> v. <br><br> DAVID IGE, in his official capacity as Governor of the State of Hawaii; <br><br> *Defendant*. | Case No. 1:20-cv-00273 JAO-WRP <br><br> **APPLICATION FOR TEMPORARY RESTRAINING ORDER AND FOR ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Judge:   Hon. Jill A. Otake <br> Hearing: <br> Date: <br> Time: <br> No Trial Date |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Plaintiffs Holly Carmichael, Timothy Carmichael, Brooke McGowan, and Russell Hirsch, through counsel, will and hereby do apply to this Court pursuant to Fed. R. Civ. P. 65(b) and Local Rules 7.1 and 7.10 for a temporary restraining order against Defendant David Ige, in his official capacity as Governor of Hawaii, and for the issuance of an order to show cause why a preliminary injunction should not issue, as follows:

1.      Defendant, as well as his agents, employees, and successors in office, as well as the political subdivisions of the State of Hawaii, shall be restrained and enjoined from enforcing, attempting to enforce, threatening to enforce, or otherwise requiring compliance with any of the Defendant's emergency proclamations which mandate a 14-day quarantine.

2.      Defendant, as well as his agents, employees, and successors in office, as well as the political subdivisions of the State of Hawaii. shall be restrained and enjoined from enforcing, attempting to enforce, threatening to enforce, or otherwise requiring compliance with any prohibition on Plaintiffs' due process and equal protection rights, including the right to travel.

3.      Defendants shall show cause, at a time and place to be directed by the Court, why a preliminary injunction should not issue requiring Defendants to act as described above; the temporary restraining order shall remain effective until such

i

time as the Court has ruled on whether a preliminary injunction should issue. Such relief is necessary to prevent Defendants from further violating Plaintiffs' constitutional rights, pending trial on the merits of Plaintiffs' claims.

This Application is made on the grounds that Plaintiffs are likely to succeed on the merits of this case, they will suffer irreparable harm without injunctive relief, the balance of equities tips sharply in their favor, and the relief sought is in the public interest.

Good cause exists to issue the requested Order to preserve Plaintiffs' rights under the Constitution of the United States, and to avoid irreparable harm to those rights. This Application is supported by the accompanying Memorandum of Points and Authorities, by Plaintiffs' Complaint, and all exhibits attached thereto, by the declarations of Plaintiffs and their counsel, James Hochberg, and by such further argument and evidence that may be adduced at any hearing on this matter or of which the Court may take judicial notice.

The Complaint in this action was filed on June 15, 2020. All papers relating to this Application will be delivered by email to counsel for the Hawaii Attorney General by the close of business on June 17, 2020. As reflected in the accompanying declaration of James Hochberg, Plaintiffs have notified the Office of the Hawaii Attorney General of Plaintiffs' intention to file this Application and to seek a temporary restraining order of the nature described above.

Plaintiffs request that the Court waive any bond requirement because enjoining Defendants from unconstitutionally prohibiting Plaintiffs' fundamental rights to travel, liberty, and equal protection will not financially affect Defendants. Pursuant to LR 7.1(c), Plaintiffs' position is that a hearing on this motion should be held.

Respectfully submitted,

Date: June 17, 2020

By:   <u>/s/ James Hochberg</u>
JAMES HOCHBERG, AAL, LLLC

DHILLON LAW GROUP INC.
HARMEET K. DHILLON
MARK P. MEUSER
GREGORY R. MICHAEL

*Attorneys for Plaintiffs*

## **TABLE OF CONTENTS**

INTRODUCTION ......................................................................................1

LEGAL STANDARD................................................................................1

STATEMENT OF FACTS .......................................................................3

ARGUMENT ..........................................................................................10

   I.   PLAINTIFFS ARE ENTITLED TO TEMPORARY AND PRELIMINARY INJUNCTIVE RELIEF ......................................................................11

       1.   The State Order Violates the Plaintiffs' Right to Travel (Freedom of Movement) Drawn from the Fifth Amendment's Due Process Clause. .........11

       2.   The State Order and Emergency Proclamations Violate the Plaintiffs' Right to Liberty Drawn from the Fifth Amendment's Due Process Clause....14

       3.   The State Order Violates the Plaintiffs' Fourteenth Amendment Rights to Equal Protection. ............................................................................16

       4.   The State Order Violates the Plaintiffs' Fundamental Liberties Drawn from the Fifth and Fourteenth Amendments. .................................................18

   II.   THE COURT SHOULD DISPENSE WITH ANY BOND REQUIREMENT .................................................................................22

CONCLUSION ......................................................................................24

## TABLE OF AUTHORITIES

**Cases**

*All. For Wild Rockies v. Cottrell,*
    632 F.3d 1127 (9th Cir. 2011)..................................................................2

*Aptheker v. Secretary of State,*
    378 U.S. 500 (1964)............................................................... 11, 12, 15

*Bible Club v. Placentia-Yorba Linda School Dist.,*
    573 F. Supp. 2d 1291 (C.D. Cal. 2008) ................................................23

*Carroll v. United States,*
    267 U.S. 132 (1925).................................................................................3

*Chavez v. Martinez,*
    538 U.S. 760 (2003)..............................................................................15

*Connor v. Donaldson,*
    422 U.S. 563 (1975)..............................................................................15

*Doctor John's, Inc. v. Sioux City,*
    305 F. Supp. 2d 1022 (N.D. Iowa 2004)...............................................23

*Dunn v. Blumstein,*
    405 U.S. 330 (1972)..............................................................................12

*Earth Island Inst. v. United States Forest Serv.,*
    351 F.3d 1291 (9th Cir. 2003).................................................................2

*Engquist v. Oregon Dept. of Agriculture,*
    553 U.S. 591 (2008)..............................................................................17

*Gayle v. Governor of Guam,*
    414 F. Supp. 636 (D. Guam 1976)..........................................................3

*Hamdi v. Rumsfeld,*
    542 U.S. 507 (2004)..............................................................................15

*Jorgensen v. Cassiday,*
   320 F.3d 906 (9th Cir. 2003)...................................................................22

*Kent v. Dulles,*
   357 U.S. 116, 127 (1958)...................................................................11

*Maher v. Roe,*
   432 U.S. 464 (1977)...................................................................12

*Memorial Hospital v. Maricopa Cnty.,*
   415 U.S. 250  (1974)...................................................................12

*Plyler v. Doe,*
   457 U.S. 202 (1982)................................................... 17, 18, 19, 21

*Robinson v. State of California,*
   370 U.S. 660 (1962)...................................................................15

*Ross v. Moffitt,*
   417 U.S. 600 (1974)...................................................................17

*Saenz v. Roe,*
   526 U.S. 489 (1999)...................................................................17

*Saucier v. Katz,*
   533 U.S. 194 (2001)...................................................................15

*Shapiro v. Thompson,*
   394 U.S. 618 (1969)...................................................................1

*Washington v. Glucksberg,*
   521 U.S. 702 (1997)................................................... 15, 19

*Willowbrook v. Olech,*
   528 U.S. 562 (2000)...................................................................17

*Winter v. Natural Res. Def. Council, Inc.,*
   555 U.S. 7  (2008)...................................................................2

*Wisconsin Legislature v. Palm*,
　942 N.W.2d 900 (Wis. 2020) ..................................................................10

**Statutes**
42 U.S.C. § 1983 ....................................................................................11

Haw. Rev. Stat. § 127A ..........................................................................19

Haw. Rev. Stat. § 127A-1 ................................................................. 19, 20

Haw. Rev. Stat. § 127A-13 ............................................................... 16, 20

Haw. Rev. Stat. § 127A-14 (2020) ............................................. 2, 3, 4, 20

Haw. Rev. Stat. § 127A-2 ......................................................................3, 5

**Rules**
Fed. R. Civ. P. 65(c).................................................................................22

## MEMORANDUM OF POINTS AND AUTHORITIES

"[The] nature of our Federal Union and our constitutional concepts of personal liberty unite to require that all citizens be free to travel throughout the length and breadth of our land uninhabited by statutes, rules, or regulations which unreasonably burden or restrict this movement." *Shapiro v. Thompson,* 394 U.S. 618, 629 (1969).

## INTRODUCTION

Deprivation of fundamental liberties is not an appropriate societal vaccine for a pandemic. The United States Constitution does not contain exceptions for health crises, and neither may Hawaii's executive branch ignore fundamental constitutional norms on the basis of a health emergency. In an overreaching response to the coronavirus pandemic, Defendant has significantly and unconstitutionally restricted the travel rights of Americans. While protecting the health and safety of the public during this crisis is critical to everyone—including Plaintiffs—the Governor may not abrogate the rights and liberties enshrined by the U.S. Constitution to accomplish this goal through overbroad decrees.

Defendant's actions violate the Fifth and Fourteenth Amendment of the U.S. Constitution. This Court should immediately enjoin Defendant from further violating these fundamental liberties.

## LEGAL STANDARD

The Ninth Circuit has established two sets of criteria for evaluating a request for injunctive relief. *Earth Island Inst. v. United States Forest Serv.*, 351 F.3d

1291, 1297 (9th Cir. 2003). Under the "traditional criteria, a plaintiff must show:
(1) a strong likelihood of success on the merits; (2) a likelihood of irreparable
injury to the plaintiff if preliminary relief is not granted; (3) a balance of hardships
favoring the plaintiff; and (4) advancement of the public interest. *See, e.g.*, *Winter
v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008).

Alternatively, a temporary restraining order or preliminary injunction may
be appropriate when a movant raises "serious questions going to the merits" and
the "balance of hardships tips sharply in the plaintiff's favor," provided that the
plaintiff is able to show there is a likelihood of irreparable injury and that the
injunction is in the public interest. *All. For Wild Rockies v. Cottrell,* 632 F.3d
1127, 1131 (9th Cir. 2011).

Although Hawaii statutory law provides the Governor with the power to
unilaterally promulgate regulations in an emergency, such regulations must at least
be reasonable and limited in duration. *See*, Haw. Rev. Stat. § 127A-14 (2020).
Because such regulations may severely impinge the civil liberties of the populace
and curb an individual's freedom, only a clear showing of emergent necessity may
justify their imposition. Freedom of movement is a fundamental right which may
be restricted only where necessary to further the most compelling state interest, and
such regulations must be narrowly circumscribed. *Gayle v. Governor of Guam*, 414

2

F. Supp. 636, 638-39 (D. Guam 1976) (citing *Carroll v. United States*, 267 U.S.

132 (1925).

### STATEMENT OF FACTS

On March 4, 2020, Governor Ige issued an Emergency Proclamation for the

entire State of Hawaii which Governor Ige based on his determination that the

conditions in Hawaii were of such character and magnitude to constitute an

emergency or disaster as contemplated by Hawaii Revised Statutes Sections 127A-

2 and 127A-14, and on that basis Governor Ige "declare[d] that the disaster

emergency relief period shall commence immediately and continue through April

29, 2020, or by a separate proclamation, whichever occurs first." (Hochberg Decl.

Ex. 1)

> Hawaii Revised Statutes Section 127A-14(d) specifically provides that:
>
> "[a] state of emergency and a local state of emergency shall terminate automatically sixty days after the issuance of a proclamation of a state of emergency or local state of emergency, respectively, or by a separate proclamation of the governor or mayor, whichever occurs first."
>
> The April 29, 2020 ending date of Governor Ige's March 4, 2020

Emergency Proclamation fit precisely within the 59-day maximum life for the

proclamation as provided in HRS 127A-14(d), cited by Governor Ige in his

Emergency Proclamation dated March 4, 2020. Since that date, Governor Ige has

issued nine Supplementary Proclamations. (Hochberg Decl. Ex. 2-10).

Governor Ige's Ninth Supplementary Proclamation suspends HRS Section 27A-14(b) but not the automatic termination provisions of HRS Section 127A-14(d). (Hochberg Decl. Ex. 10). The Ninth Supplementary Proclamation is unlawful in every respect, in that it continued the general house arrest provisions for every person within the State of Hawaii (persons experiencing homelessness are exempt) except for the listed reasons to leave one's home' restrictions on church meetings, inter-island (expiring at 12:01am on Tuesday, June 16, 2020) and interstate travel (mandatory 14-day quarantine for people entering the state if not exempted from the obligation); gathering in groups of more than ten people; and all the other prohibitions, requirements, regulations, suspensions of laws, and criminal penalties of the prior proclamations. (*Id*.)

The Ninth Supplementary Proclamation also conscripts and mandates every host of any guest (that is subject to quarantine) to be responsible for ensuring their guest or guests abide by the mandatory quarantine requirements and notify law enforcement immediately when the host learns a guest has failed to do so; and furthermore provides that it shall be the duty of all hosts to ascertain the period of self-quarantine for their guest or guests and to determine whether or not their guest or guests remain confined to their designated quarantine location throughout the period of self-quarantine; and finally, the penalty for violating these requirements include imprisonment up to one year and/or a fine of up to $5,000. (*Id*.)

4

The Ninth Supplementary Proclamation also attached as Exhibit G, a very vague and ambiguous chart entitled "State Roadmap to Recovery and Resilience" which purports to continue Governor Ige's exercise of emergency powers through the actions of the county mayors, for a completely undetermined period, with continued disruption and violations of civil rights noted above until a state of "New Normal (No Disruption)" is achieved. (Hochberg Decl. Ex. 11).

**No COVID-19 Emergency Exists but the Governor is Creating an Economic Emergency**

The Hawaii State Department of Health (DOH) reports as of June 14, 2020, https://health.hawaii.gov/coronavirusdisease2019/, the following cumulative statistics for Covid-19 data in the State of Hawaii:

      a.    There have been a total 728 cases of Covid-19 identified in Hawaii (which include 12 residents diagnosed outside of Hawaii as well as presumptive and confirmed cases).

      b.    91 have required hospitalization.

      c.    17 died.

The definition of an "Emergency" for purposes of exercise of emergency powers is defined in HRS 127A-2: "Emergency" means any occurrence, or imminent threat thereof, which results or may likely result in **substantial injury or harm to the population** or substantial damage to or loss of property (emphasis added).The definition of a "State of emergency" is defined in HRS Section 127A-2 as an occurrence in any part of the State that requires efforts by state government

to protect property, public health, welfare, or safety **in the event of an emergency or disaster**, or to reduce the threat of an emergency or disaster, or to supplement the local efforts of the county.

"Disaster" is defined in HRS 127A-2 as any emergency, or imminent threat thereof, which results or may likely result in loss of life or property and requires, or may require, assistance from other counties or states or from the federal government.

The total population of the State of Hawaii according to the Hawaii Department of Business and Economic Development for 2016 was 1,427,559 (http://files.hawaii.gov/dbedt/census/popestimate/2019_state_pop_hi/nst-est2019-01.pdf). According to the CDC, there have been 98,695 deaths in the United States involving COVID-19, while Hawaii has suffered only 16 deaths.[1] (https://www.cdc.gov/nchs/nvss/vsrr/covid19/index.htm). Hawaii thus has .016% of the nation's COVID-19 deaths while accounting for .431% of the nation's population. (https://www.census.gov/quickfacts/fact/table/HI,US/PST045219).

Dr. Joel Hay, PhD, has stated that the last COVID-19 death in Hawaii was reported on May 3. (Hay Decl. ¶ 30). Dr. Hay also has determined that ending the Hawaii quarantine will not trigger a public health emergency. (Hay Decl. ¶ 31). Dr.

---

[1] While the State of Hawaii publishes a death total of 17, the CDC only lists it at 16.

Hay concluded that based on his education and experience, the "14-day quarantines are ineffective because there is no emergency in Hawaii or in the United States." (Hay Decl. ¶ 36).

While Hawaii does not have a COVID-19 emergency, the evidence is clear that Governor Ige is rapidly creating an economic emergency in Hawaii by his unlawful Executive Orders. According to the U.S. Department of Labor, Hawaii has 119,029 currently receiving unemployment benefits (https://www.dol.gov/ui/data.pdf). The United States Census shows that Hawaii has 852,354 working age adults. (https://www.census.gov/quickfacts/fact/table/HI,US/PST045219). Thus, one out of every seven residents of Hawaii is receiving unemployment benefits. For every one Hawaii resident who has died involving coronavirus, 7,439 are receiving unemployment benefits.

**Plaintiffs Carmichael Have Not Been Able to Visit Their Property in Hawaii**

Plaintiffs Carmichael live in California and are the co-trustees of the Holly L Vick Living Trust which is the fee owner a condominium apartment in Lahaina on the Island of Maui. (Carmichael Decl. ¶ 1). Carmichael routinely visit Maui to use their condominium up to ten weeks each calendar year, and which they include in a rental pool during the times they are not present in the condominium. (Carmichael Decl. ¶ 2).

7

In September, 2019, the Carmichaels made travel arrangements for April 1, 2020 to travel from California to Hawaii with their children to stay in the condominium on Maui to celebrate Easter there. (Carmichael Decl. ¶ 3). Prior to April 1, 2020, Carmichael learned that Governor Ige ordered mandatory 14-day quarantine for any visitors to the State of Hawaii and to Maui, and on that basis cancelled their April 1, 2020 visit. (Carmichael Decl. ¶ 5).

In February, 2020, they made travel arrangements for May 30, 2020 to stay several weeks. (Carmichael Decl. ¶ 4). This trip has also been canceled. (Carmichael Decl. ¶ 6). The Carmichael have tried to reschedule their Maui visits, and each time the mandatory quarantine was still in effect as it is now into July, 2020. (Carmichael Decl. ¶ 8). In light of the Ninth Supplementary Proclamation, the Carmichael have had to again cancel their planned trip to Hawaii on July 1, 2020. (Carmichael Decl. ¶ 6).

As a result, the Carmichaels have not been able to visit Maui, and the Ninth Supplementary Proclamation appears to order that it will continue the restrictions to July 31, 2020.

## Plaintiff McGowan is Unable to Travel to the Mainland to do Volunteer Work and Visit Aging Relatives

Plaintiff McGowan resides with her husband on the island of Oahu. (McGowan Decl. ¶ 1). Her daughter lives on the U.S. mainland who is in the

middle of home construction project which she intended to assist with this summer. (McGowan Decl. ¶ 3).

In addition, McGowan has a 90-year-old grandmother suffering from rapidly deteriorating Alzheimers/dementia who resides on the U.S. mainland living with McGowan's aunt; McGowan plans to visit to her grandmother in order to see her in person and be in close, personal contact before her grandmother is no longer able to recognize and identify McGowan. (McGowan Decl. ¶ 5-6).

However, Governor Ige's 14-day mandatory quarantine orders make it impossible for McGowan to be able to both visit the mainland to assist her daughter, visit her grandmother and remain quarantined for an additional 14-days upon returning to Honolulu. (McGowan Decl. ¶ 7).

**Plaintiff Hirsch has been Unable to Visit His Properties in Hawaii**

Plaintiff Hirsch lives in the City of Incline Village in the state of Nevada. He owns a house in the City of Kailua, which is in the County of Honolulu. Also, he owns a farm in the city of Hilo, which is in Hawaii County, Hawaii where he grows fruit trees. (Hirsch Decl. ¶ 1-3). Hirsch needs to return to Hawaii to maintain his properties. He needs to tend to the fruit trees on his farm and make electrical repairs on his home in Kailua. The cost of hiring an electrician to make the repairs in his absence would be substantially more expensive. (Hirsch Decl. ¶ 4).

In addition, Hirsch's daughter, who was raised in Hawaii, recently graduated from the University of California San Diego. He wants to celebrate his daughter's graduation in the place where she grew up. (Hirsch Decl. ¶ 5). Further, Hirsch is worried about a potential lawsuit. His neighbor in Hilo wants Hirsch to remove his fruit trees. He has retained an attorney, but he would like to travel to the Island to assess the situation. (Hirsch Decl. ¶ 6).

Governor Ige's 14-day mandatory quarantine orders makes it impossible for Hirsch to be able to visit the state of Hawaii to maintain his properties, celebrate his daughter's graduation, assess a potential lawsuit, and remain quarantined for an additional 14 days upon arrival. (Hirsch Decl. ¶ 7).

## ARGUMENT

On May 13, 2020, the Supreme Court of Wisconsin ruled that Wisconsin's Emergency Order 28 mandating shelter in place was unenforceable. *Wisconsin Legislature v. Palm*, 942 N.W.2d 900 (Wis. 2020). In that case, the court found that the Secretary of the Wisconsin Department of Health Services did not follow proper rule making procedures. Wisconsin law requires "a properly promulgated rule before criminal sanctions could follow violations." *Id.* p. 913, ¶37.

In this case, Plaintiffs are challenging the constitutionality of Hawaii's stay-at-home, travel ban and other orders. Hawaii's orders similarly criminalize violations of the State Orders.

10

## I.      PLAINTIFFS ARE ENTITLED TO TEMPORARY AND PRELIMINARY INJUNCTIVE RELIEF

Plaintiffs not only raised serious questions going to the merits, but there is a strong likelihood they will succeed in proving their claims on multiple constitutional grounds.

> **1. The State Order Violates the Plaintiffs' Right to Travel (Freedom of Movement) Drawn from the Fifth Amendment's Due Process Clause.**

Plaintiffs' first cause of action asserts facial and as-applied challenges to the State Order pursuant to 42 U.S.C. § 1983. The right to travel is a fundamental right of all citizens drawn from the due process clause of the Fifth Amendment. *Kent v. Dulles*, 357 U.S. 116, 127 (1958). It includes both interstate and intrastate travel. *Id.*, 357 U.S. at 126. It includes the travel required for employment. *Id.* "It may be as close to the heart of the individual as the choice of what he eats, or wears, or reads. Freedom of movement is basic in our scheme of values." *Id.* (citations omitted). Freedom of movement "is important for job and business opportunities— for cultural, political, and social activities—for all the commingling which gregarious man enjoys." *Aptheker v. Secretary of State*, 378 U.S. 500, 519-520 (1964) (Douglas, J., concurring). It "is the very essence of our free society[.]" *Id.* If "curtailed, all other rights suffer[.]" *Id.* Unless war is declared or a person is subject to criminal prosecution, there is no constitutional "way to keep a citizen

11

from traveling within or without the country[.]" *Id.* It "is an unconditional personal right, a right whose exercise may not be conditioned." *Dunn v. Blumstein*, 405 U.S. 330, 341 (1972) (internal quotations, citations omitted).

Even though Hawaii remains (unlawfully) in a declared state of emergency, and people may abuse the right to travel, citizens do not lose their constitutional rights. *See Aptheker,* 378 U.S. at 520 "Those with the right of free movement use it at times for mischievous purposes. But that is true of many liberties we enjoy. We nevertheless place our faith in them, and against restraint, knowing that the risk of abusing liberty so as to give rise to punishable conduct is part of the price we pay for this free society."

Any abridgment of the right to travel invokes the strict scrutiny test. *Dunn*, 405 U.S. at 339. It does not matter if the State Order actually deters any travel at all—the mere reality that it "penalize[s] the exercise of th[e] right to travel" triggers strict scrutiny. *Id.*, 405 U.S. at 340 (parentheses omitted); *Maher v. Roe*, 432 U.S. 464, 488 (1977) (Brennan, J., dissenting). Under strict scrutiny review, the law may be justified only if it furthers a compelling government purpose, and there must be no less restrictive alternative available. *Memorial Hospital v. Maricopa Cnty.*, 415 U.S. 250, 257-258 (1974).

Governor Ige's emergency orders mandate that all people in Hawaii stay at home, and shut down their "non-essential" businesses. It orders that every person

(not exempt) entering Hawaii must remain quarantined in their place of abode for 14 consecutive days upon criminal penalties for a violation.

As of June 15, 2020, there have been 17 deaths allegedly related to COVID-19.[2] Moreover, Hawaii has about .5% of the population, but it has .01% of the nation's COVID-19 deaths.[3] Strikingly, Hawaii accounts for approximately 6% of the nation's total unemployment.[4]

These numbers do not comprise a compelling governmental interest in shutting down the entire state of Hawaii (even with the limited relaxing that has been bestowed by Defendant). The definition of an "emergency" for purposes of exercise of emergency powers is defined in HRS 127A-2: "Emergency" means any occurrence, or imminent threat thereof, which results or may likely result in substantial injury or harm to the population or substantial damage to or loss of property (emphasis added). The total population of the State of Hawaii for 2016 was 1,427,559.[5] According to the CDC, there have been 100,303 deaths in the United States involving COVID-19 yet, as previously noted, a mere 17 can be

---

[2] https://health.hawaii.gov/coronavirusdisease2019/what-you-should-know/current-situation-in-hawaii/ (last visited June 15, 2020).
[3] https://www.cdc.gov/nchs/nvss/vsrr/covid19/index.htm; https://www.census.gov/quickfacts/fact/table/HI,CA,US/PST045219 (last visited June 14, 2020).
[4] https://www.dol.gov/ui/data.pdf (last visited June 14, 2020).
[5] http://files.hawaii.gov/dbedt/census/popestimate/2019_state_pop_hi/nst-est2019-01.pdf (last visited June 14, 2020).

attributed to Hawaii.[6]

Governor Ige's Emergency Proclamations and other Orders violate Plaintiffs' fundamental constitutional right to travel between states of the United States. Unless enjoined, Defendant will continue to act under color of state law to unlawfully deprive Plaintiffs of their right to interstate travel. The time has come for judicial scrutiny of his actions. Each of these considerations shows that Plaintiffs have not only raised serious questions going to the merits of their claims, they have shown that they have a substantial likelihood of success on their right to travel claim. Plaintiffs therefore are entitled to temporary and preliminary injunctive relief.

   2.  **The State Order and Emergency Proclamations Violate the Plaintiffs' Right to Liberty Drawn from the Fifth Amendment's Due Process Clause.**

Plaintiffs' second cause of action asserts facial and as-applied challenges to the State Order and Emergency Proclamations pursuant to 42 U.S.C. § 1983.

The Fifth Amendment of the U.S. Constitution declares that "[n]o person shall … be deprived of life, liberty, or property without due process of law." The Due Process clause "forbids the government to infringe [on] fundamental liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Washington v. Glucksberg*,

---

[6] https://www.cdc.gov/nchs/nvss/vsrr/covid19/index.htm (last visited June 15, 2020).

521 U.S. 702, 721 (1997) (internal quotations omitted). This applies to "fundamental rights and liberties which are deeply rooted in this Nation's history and tradition and implicit in the concept of ordered liberty." *Chavez v. Martinez*, 538 U.S. 760, 775 (2003) (internal quotations and citations omitted) (*partially overruled on other grounds by Saucier v. Katz*, 533 U.S. 194 (2001)).

Substantive due process "includes more than the absence of physical restraint." *Washington v. Glucksberg*, 521 U.S. 702, 719 (1997) (citation omitted). It protects—in addition to all the enumerated freedoms in the Bill of Rights—a wide array of liberties including the right to marry, to privacy, and to refuse unwanted medical treatment. *Id.*, 521 U.S. at 720. Citizens also have a fundamental right to be free from confinement without due process of law. *Hamdi v. Rumsfeld*, 542 U.S. 507, 531 (2004). It is self-evident that the right to freely come and go from one's home is a fundamental right. *See Aptheker,* 378 U.S. at 520. The "involuntary confinement of an individual for any reason, is a deprivation of liberty which the State cannot accomplish without due process of law." *Connor v. Donaldson*, 422 U.S. 563, 580 (1975). Also, any "confinement must cease when those reasons [giving rise to it] no longer exist." *Id.*

Quarantine laws may be permitted as to infected individuals, but not the public at large. *Robinson v. State of California*, 370 U.S. 660, 666 (1962). Hawaii law only permits the Governor to quarantine "persons who are affected with or

15

believed to have been exposed to any infectious, communicable, or other disease that is, in the governor's opinion, dangerous to the public health and safety." HRS §127.A-13(a)(1).

The Hawaii Governor's unlawful emergency orders mandate persons who arrive into Hawaii from out of state be involuntarily confined in quarantine in their place of abode for 14 consecutive days upon arrival, and that all residents of Hawaii, even those who have not traveled, stay at home and shut down their "non-essential" businesses. The unlawful orders, which command house arrest, violate Plaintiffs' fundamental liberty interests and has caused Plaintiffs to lose business from out of state travelers. These unlawful orders are tantamount to a state-wide confinement of Hawaii residents, regardless of whether they are infected with COVID-19.

Each of these considerations shows that Plaintiffs have not only raised serious questions going to the merits of their claims, they have shown that they have a substantial likelihood of success on their right to liberty claim.

### 3.  The State Order Violates the Plaintiffs' Fourteenth Amendment Rights to Equal Protection.

Plaintiffs' third cause of action assets facial and as-applied challenges to State order pursuant to 42 U.S.C. § 1983.

The Fourteenth Amendment to the United States Constitution provides that "[n]o State … deny to any person within its jurisdiction the equal protection of the laws." Equal protection principles revolve around "governmental classifications that affect some groups of citizens differently than others." *Engquist v. Oregon Dept. of Agriculture*, 553 U.S. 591, 601 (2008) (citations omitted). Equal protection has even been upheld when the government treated a "class of one" differently from others. *Willowbrook v. Olech*, 528 U.S. 562, 563 (2000).

The touchstone of this analysis is whether a state creates disparity "between classes of individuals whose situations are arguably indistinguishable." *Ross v. Moffitt*, 417 U.S. 600, 609 (1974). Any classification that impairs a fundamental right is "presumptively invidious[.]" *Plyler v. Doe*, 457 U.S. 202, 216 (1982) (holding that a state's denial of free public education to undocumented children was unconstitutional).

Any classification imposing a penalty on the exercise of the right to travel or right to liberty is a violation of the equal protection clause unless it is "necessary to promote a *compelling* governmental interest[,]" (*Saenz v. Roe*, 526 U.S. 489, 499 (1999) (italics in original)), and "has been precisely tailored to serve" this interest (*Plyler,* 457 U.S. at 217).

The right to work and operate one's business is a fundamental right. Defendant's arbitrary, unilateral categorization of some businesses as "essential"

and others as "non-essential" without an apparent connection to fighting the COVID-19 emergency, has shut down Plaintiffs opportunity to make a living. This disparate classification and treatment violates Plaintiffs' fundamental rights, and is presumptively invidious. Defendant must show that this disparate treatment "has been precisely tailored to serve a compelling governmental interest." *Plyler*, 457 U.S. at 217. Allowing a politically-connected business that violates federal law to continue operating during the pandemic while shutting down other businesses that follow the law, violates the core principles of equal protection.

There is no compelling reason to shut down vacation rental apartments when other retail stores are allowed to remain open. There is no rational basis for this. The ability to exercise fundamental right to travel and liberty should not be dependent on the size of your lobbying budget. Defendants bear the burden of defending their liberty-restricting choices, which on their face are irrational and indefensible.

## 4. The State Order Violates the Plaintiffs' Fundamental Liberties Drawn from the Fifth and Fourteenth Amendments.

Plaintiffs' fourth cause of action asserts as-applied challenges to the State Order pursuant to 42 U.S.C. § 1983. Not only does the State Order violate Plaintiffs' fundamental liberties under the U.S. Constitution, it also violates Plaintiffs' due process and equal protection rights drawn from Hawaii law.

The Fifth Amendment of the U.S. Constitution declares that "[n]o person shall … be deprived of life, liberty, or property without due process of law." The Due Process clause "forbids the government to infringe [on] fundamental liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Washington*, 521 U.S. at 721 (internal quotations omitted).

The Fourteenth Amendment to the United States Constitution provides that "[n]o State … deny to any person within its jurisdiction the equal protection of the laws." Any classification that impairs a fundamental right is "presumptively invidious[.]" *Plyler*, 457 U.S. at 216.

Hawaii Revised Statutes Chapter 127A (hereinafter referred to as the "Act") permits the Hawaii Governor, in the appropriate circumstance set forth above, to issue emergency orders necessary to protect the **population** from **substantial injury** so long as such orders are consistent with the U.S. Constitution and the Constitution of the State of Hawaii. Governor Ige is authorized to manage state resources and agencies and coordinate efforts with the federal and local governments under the Act. However, Section 127A-1(c) of the Act expressly *prohibits* the conferring of any power or permitting any action that is inconsistent with the Constitution and laws of the United States.

19

HRS Section 127A-1(c) also provides that "due consideration shall be given to the circumstances as they exist from time to time." Moreover, HRS Section 127A-14(d) expressly limits the duration of any and every emergency proclamation by Defendant Governor by stating that "[a] state of emergency and a local state of emergency shall terminate automatically sixty days after the issuance of a proclamation of a state of emergency or local state of emergency, respectively, or by a separate proclamation of the governor, whichever occurs first." Finally, HRS Section 127A-13(1) only permits the Governor to require quarantine or segregation of persons "who are affected with or believed to have been exposed to any infectious, communicable or other disease that is … dangerous to the public health and safety . . .."

Governor Ige violated these Hawaii statutes by continuing the emergency orders beyond the 59th day (May 3, 2020), as well as beyond the Safe Date; as well as by denying Plaintiffs all the Constitutional protections, including but not limited to, due process and equal protection (in addition to the other claims made in this Motion). After the expiration on May 3, 2020 of the emergency orders, and after the required termination of the emergency orders on the Safe Date, the Hawaii Governor's emergency orders denied due process by usurping the power of legislative and administrative processes with respect to further law-making exercises without providing any process at all.

Governor Ige's emergency orders require, subject to criminal penalties, all persons to stay at home (with exceptions) without regard to whether they are individually affected with or believed to have been exposed to any infectious, communicable or other disease that is dangerous to the public health and safety; and furthermore, Governor Ige's emergency orders mandate, subject to criminal penalties, that all persons who arrive in Hawaii from out of state to involuntary quarantine without regard to whether or not any individual may be affected with or believed to have been exposed to any infectious, communicable or other disease that is dangerous to the public health and safety.

Governor Ige's emergency orders provide for no opportunity for a hearing; no appeal; no reconsideration, notwithstanding that the Governor ordered house arrest for all people in Hawaii, engaged in the promulgation of administrative regulations and legislative prerogatives. Governor Ige's emergency orders' position of "no process" is not due process.

In addition, Governor Ige's violation of Chapter 127A denies equal protection of the laws by allowing some businesses and professions to be exercised, but all other professions and events are prohibited. Governor Ige has not shown and cannot show that these arbitrary classifications of different businesses are "precisely tailored to serve a compelling governmental interest." *Plyler*, 457 U.S. at 217. Governor Ige has not done so.

21

Instead, Governor Ige has shut down wedding venues, graduation ceremonies, limousine services, travel accommodations, gatherings of ohana and many other gatherings protected by liberty interests while allowing some retail stores to remain open. Governor Ige has banned musicians from performing and even practicing; banned physicians from performing life-saving examinations, tests, or surgery, but determining that medical abortion procedures be permitted. These are all violations of Plaintiffs' fundamental rights under the U.S. Constitution.

## II.      THE COURT SHOULD DISPENSE WITH ANY BOND REQUIREMENT

Rule 65(c) of the Federal Rules of Civil Procedure provides that a TRO or preliminary injunction may be issued "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). However, the Court has discretion as to whether any security is required and, if so, the amount thereof. *See, e.g., Jorgensen v. Cassiday,* 320 F.3d 906, 919 (9th Cir. 2003).

Plaintiffs request that the Court waive any bond requirement because enjoining Defendants from unconstitutionally enforcing the orders as to the travel-related activities will not financially affect Defendants, who already categorically

exempt specified activities from compliance. A bond would, however, be burdensome on already burdened Plaintiffs under these circumstances. *See*, *e.g., Bible Club v. Placentia-Yorba Linda School Dist.,* 573 F. Supp. 2d 1291, n.6 (C.D. Cal. 2008) (waiving requirement of student group to post a bond where case involved "the probable violation of [the club's] First Amendment rights" and minimal damage to the District issuing injunction); *citing Doctor John's, Inc. v. Sioux City,* 305 F. Supp. 2d 1022, 1043-44 (N.D. Iowa 2004) ("requiring a bond to issue before enjoining potentially unconstitutional conduct by a governmental entity simply seems inappropriate, because the rights potentially impinged by the governmental entity's actions are of such gravity that protection of those rights should not be contingent upon an ability to pay.").

//

//

## CONCLUSION

Plaintiffs respectfully request that this Court grant Plaintiffs' motion for preliminary injunction, and issue an order as follows:

A.     An order temporarily and preliminarily enjoining and prohibiting Defendant, as well as his agents, employees, and successors in office, as well as the political subdivisions of the State of Hawaii, from enforcing Governor Ige's emergency orders or otherwise interfering with Plaintiffs' constitutional rights and liberties;

B.     Such other and further relief as the Court deems appropriate and just.

Date: June 17, 2020

/s/ JAMES HOCHBERG, ESQ.
James Hochberg, Esq.

DHILLON LAW GROUP, INC.
Harmeet K. Dhillon, Esq.
Mark P. Meuser, Esq.
Gregory R. Michael, Esq.

Attorneys for Plaintiffs