ERIC S. DREIBAND, Assistant Attorney General
ALEXANDER V. MAUGERI, Deputy Assistant Attorney General
United States Department of Justice, Civil Rights Division
Office of the Assistant Attorney General
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530
Telephone: (202) 514-4609; Fax: (202) 514-8490
Alexander.Maugeri@usdoj.gov

KENJI M. PRICE, United States Attorney (#10523)
SYDNEY SPECTOR, Assistant United States Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii 96850
Tel: (808) 541-2850; Fax: (808) 541-3752
Sydney.Spector@usdoj.gov

Attorneys for UNITED STATES OF AMERICA

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HOLLY CARMICHAEL, *et al*., <br><br> *Plaintiffs*, <br><br> v. <br><br> DAVID IGE, in his official capacity as the Governor of the State of Hawaii, <br><br> *Defendant*. | Case No. 1:20-cv-00273 JAO-WRP |

## STATEMENT OF INTEREST ON BEHALF OF THE UNITED STATES

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................... i

INTRODUCTION ...................................................................................1

BACKGROUND ....................................................................................3

ARGUMENT .......................................................................................6

CONCLUSION ...................................................................................17

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Bayley's Campground Inc. v. Mills*,
   No. 2:20-CV-00176-LEW, 2020 WL 2791797 (D. Me. May 29, 2020) .............10

*Chalker v. Birmingham & Nw. R.R. Co.*,
   249 U.S. 522 (1919).................................................................................. 2, 8, 9

*Compagnie Francaise de Navigation a Vapeur v. Louisiana State Bd. of Health*,
   186 U.S. 380 (1902).........................................................................................11

*Crandall v. Nevada*,
   73 U.S. 35 (1868)..............................................................................................6

*Healy v. Beer Inst.*,
   491 U.S. 324 (1989)..........................................................................................9

*Hillside Dairy Inc. v. Lyons*,
   539 U.S. 59 (2003)................................................................................... passim

*Holt v. Hobbs*,
   574 U.S. 352 (2015)............................................................................. 14, 15, 16

*Jacobson v. Massachusetts*,
   197 U.S. 11 (1905)..........................................................................................11

*Paul v. Virginia*,
   75 U.S. 168 (1868)............................................................................................7

*Roberts v. Neace*,
   --- F. Supp. 3d ---, No. 2:20CV054 (WOB-CJS), 2020 WL 2115358 (E.D. Ky.
   May 4, 2020).....................................................................................................12

*Saenz v. Roe*,
   526 U.S. 489 (1999).................................................................................. 6, 7, 10

*Supreme Court of New Hampshire v. Piper*,
  470 U.S. 274 (1985)................................................................... 10, 12, 13

*Toomer v. Witsell*,
  334 U.S. 385 (1948)........................................................................ 7, 10

**<u>Statutes</u>**

28 U.S.C. § 517 ...............................................................................4

U.S. Const., art. IV, § 2……………………………………………....passim

## STATEMENT OF INTEREST ON BEHALF OF THE UNITED STATES

The United States of America respectfully files this Statement of Interest under 28 U.S.C. § 517, which authorizes the Attorney General "to attend to the interests of the United States in a suit pending in a court of the United States."  The United States has a substantial interest in the preservation of its citizens' constitutional rights, including the guarantee that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."  U.S. Const., art. IV, § 2.  Especially in the midst of the COVID-19 pandemic, the United States also has a strong interest in ensuring the development and maintenance of the best possible public-health strategies to combat the virus and protect the people of the United States from harm.  This case raises issues of national public importance regarding the interplay between the government's compelling interest in protecting the public and citizens' constitutional rights.

## INTRODUCTION

In the midst of the COVID-19 pandemic, the state and federal governments have a shared interest in promoting the best possible public-health strategies to combat the virus to protect the people of the United States from harm.  But that interest does not justify government restrictions that violate the Constitution.  Indeed, action that infringes upon constitutional rights is likely to erode public confidence in, and compliance with, legitimate efforts taken to address the COVID-19 pandemic.

Here, Hawaii likely has transgressed the Constitution's limits by effectively discriminating between Hawaii residents and out-of-state residents with respect to

"the Privileges and Immunities of Citizens in the several States."  U.S. Const., art. IV, § 2.  Persons who travel into Hawaii must self-quarantine for 14 days before they can engage in trade, rent a vehicle, use ride-sharing services, or freely enjoy more than one of their own properties.  By contrast, those residing in the State who have not recently ventured outside Hawaii generally face no such impediment to enjoying the very same freedoms.  That is true regardless of whether the Hawaii resident has taken precautions or whether the out-of-stater hails from an area relatively unscathed by the pandemic (such as Montana or Alaska) or a hotspot (such as New York City).  And this self-quarantine requirement has caused real harm to Hawaii's tourist industry, at a time when Americans most need their States to support efforts to reopen businesses in a manner consistent with public health.

The Constitution does not permit the effective discrimination challenged in this case.  Although Hawaii may adopt reasonable measures to protect its residents from the COVID-19 pandemic, it cannot impose measures that "in practical operation" discriminate against out-of-state visitors, unless the measures are substantially related to ensuring public safety.  *Chalker v. Birmingham & Nw. R.R. Co.*, 249 U.S. 522, 527 (1919); *see Hillside Dairy Inc. v. Lyons*, 539 U.S. 59, 67 (2003).  Hawaii's sweeping self-quarantine mandate appears to be insufficiently tailored to ensuring public safety.  As such, it cannot be enforced under Article IV's Privileges and Immunities Clause.

## BACKGROUND[1]

Starting on March 4, 2020, the Governor of Hawaii has issued a series of Proclamations in response to the COVID-19 pandemic.  The latest one, his Ninth Supplementary Proclamation, maintains a mandatory 14-day self-quarantine for almost anyone entering Hawaii.  Office of the Governor, *Ninth Supplementary Proclamation Related to the COVID-19 Emergency* § IV.A (June 10, 2020) ("Proclamation").[2]  Those subject to this self-quarantine mandate must confine themselves at a single "designated quarantine location" within Hawaii and not leave there for two weeks (unless they are departing from the State).  *Id.*  Nor may they rent a car or use ride-sharing services.  *Id.* § IV.D, E; *see* Hawaii Tourism Authority, *COVID-19: Mandatory 14-Day Quarantine for All Arriving Passengers* (June 18, 2020).[3]  Anyone who violates the self-quarantine mandate faces up to a year in jail and a $5,000 fine.  Proclamation § IV.F.

---

[1] The United States submits this statement of interest based on the facts alleged in the complaint, assumed in the briefs, and reflected in the accompanying exhibits and publicly available sources.

[2] https://dod.hawaii.gov/hiema/files/2020/06/2006097A-ATG_Ninth-Supplementary-Proclamation-COVID-19-distribution-signed.pdf.

[3] https://www.hawaiitourismauthority.org/news/alerts/covid-19-novel-coronavirus/ (last visited June 23, 2020).

The mandate contains two exceptions.  It does not cover those "entering the State by recreational boats which have been at sea for at least 14 consecutive days before entering State waters and have no persons on board who are ill or are exhibiting symptoms of COVID-19."  *Id.* § IV.A.  And it allows those who have traveled to Hawaii "to perform critical infrastructure functions" to "break quarantine" to perform those functions.  *Id.*

Those in Hawaii "not subject to the traveler self-quarantine," by contrast, are free to travel throughout the State—including between islands—for a variety of purposes.  *Id.* § III.B; *see id.* § IV.B.  For example, they may travel "to engage in, receive or obtain goods or services" from businesses and operations the Governor has permitted to operate; travel "to engage in minimum basic operations of businesses" not allowed to operate; travel "for health and safety"; and engage in "[o]utdoor exercise activities," including swimming and surfing.  *Id.* § III.B.

Moreover, the Governor has approved an Emergency Order issued by the City and County of Honolulu that permits the reopening of numerous businesses.  *See* Office of the Mayor, City & County of Honolulu, *City & County of Honolulu Emergency Order No. 2020-15 (COVID-19 [Novel Coronavirus]) Amendment to Hoʻolulu I Honolulu 3.0* (June 3, 2020).[4]  Thus, Hawaii residents who have not been

---

[4] https://governor.hawaii.gov/wp-content/uploads/2020/06/Amendment-to-Hooulu-i-Honolulu-3.0.pdf.

tested or quarantined may travel to Oahu from other islands within the State to engage in a wide variety of activities, such as dining at bars and restaurants and visiting museums, movie theaters, and gyms, but out-of-staters who test negative for coronavirus are still subject to a 14-day quarantine.

In addition to contributing to the harm suffered by Hawaii's tourism industry, the self-quarantine mandate precludes out-of-staters who own properties in Hawaii from taking advantage of opportunities available to Hawaii residents who have not left the island since the onset of the pandemic. For example, Russell Hirsch, a Nevada resident who owns both a house in Oahu as well as a farm on the Big Island where he grows fruit trees, needs to travel to Hawaii to maintain his two properties. Hirsch Decl. (ECF No. 12-9) ¶¶ 1-4. Specifically, Mr. Hirsch needs to tend to the fruit trees on his farm and make electrical repairs to his house. *Id.* ¶ 4. He also fears a possible lawsuit from his neighbor who wants the fruit trees gone, and would like to visit his property to assess the situation. *Id.* ¶ 6. In addition, he wants to celebrate his daughter's recent graduation in the place where she grew up. *Id.* ¶ 5. The self-quarantine mandate makes it practically impossible for him to travel to Hawaii to maintain his two properties, assess the potential of a lawsuit, and celebrate his daughter's graduation in the State. *Id.* ¶ 7.

Mr. Hirsch, along with California residents who also own property in Hawaii and a Hawaii resident who wants to travel to the mainland to visit her ailing

grandmother, brought a constitutional challenge to the latest Proclamation.  Among other things, they contend that the self-quarantine mandate violates the constitutional right to interstate travel and seek a temporary restraining order precluding its enforcement.  Another group of plaintiffs has filed a similar challenge before a different Judge in this District, and the Governor has recently defended the mandate's constitutionality in that litigation.  *See* ECF No. 19, *For Our Rights v. Ige*, No. 1:20-cv-00268-DKW-RT (D. Haw.) (June 19, 2020) ("20-268 Opp.").

## ARGUMENT

### Hawaii's Effective Discrimination Against Out-Of-State Residents Likely Violates Article IV's Privileges And Immunities Clause.

**A.**     The Supreme Court has held that the Constitution protects a right to travel from State to State.  *See Crandall v. Nevada*, 73 U.S. 35, 44 (1868).  This right to travel consists of "three different components": (1) an implied right "to enter and to leave" a State, (2) an express right, guaranteed by the Privileges and Immunities Clause of Article IV, "to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State," and (3) an express right, guaranteed by the Privileges or Immunities Clause of the Fourteenth Amendment, to "become a citizen of any State."  *Saenz v. Roe*, 526 U.S. 489, 500-03 (1999) (citation and internal quotation marks omitted).

This case involves the second component.  The Privileges and Immunities Clause of Article IV guarantees that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."  U.S. Const., art. IV, § 2.  As the Supreme Court has explained, this Clause "was designed to insure to a citizen of State A who ventures into State B the same privileges which the citizens of State B enjoy."  *Toomer v. Witsell*, 334 U.S. 385, 395 (1948).  Among other things, the Clause "insures to" citizens of one State "in other States the same freedom possessed by the citizens of those States in the acquisition and enjoyment of property and in the pursuit of happiness."  *Paul v. Virginia*, 75 U.S. 168, 180 (1868); *see also Saenz*, 526 U.S. at 502 (noting that the Clause provides "protections for nonresidents who enter a State whether to obtain employment, to procure medical services, or even to engage in commercial shrimp fishing" (citations omitted)).

Here, Hawaii's self-quarantine mandate effectively discriminates against out-of-state residents.  Under the Governor's latest Proclamation, the many Hawaii residents who have remained in the State since the onset of the pandemic—regardless of whether they have self-quarantined within the last 14 days or ever—are free to travel between the islands, maintain and freely enjoy their properties, and engage in commerce with certain businesses.  Out-of-staters like Mr. Hirsch, by contrast, must self-quarantine in a single location for two weeks before they can share in the same freedoms available to most Hawaii residents.

The fact that the self-quarantine mandate also burdens some Hawaii residents—namely, those who have recently traveled outside the State—does not mean that the Governor's scheme complies with the Privileges and Immunities Clause. *Contra* 20-268 Opp. 14. To the contrary, a measure that is neutral on its face—*i.e.*, does not distinguish between residents and non-residents—may nonetheless violate the Privileges and Immunities Clause when it has the "practical effect" of discriminating against out-of-staters. *Hillside Dairy*, 539 U.S. at 67.

For example, in addressing California regulations that treated milk differently depending on whether it originated from outside or inside the State, the Supreme Court held that the "absence of an express statement in the [challenged] laws and regulations identifying out-of-state citizenship as a basis for disparate treatment is not a sufficient basis for rejecting" a claim under the Privileges and Immunities Clause. *Id.* As the Court explained, it had previously "held that a Tennessee tax imposed on a citizen and resident of Alabama for engaging in the business of constructing a railroad in Tennessee violated the Privileges and Immunities Clause" even though "[t]he tax did not on its face draw any distinction based on citizenship or residence." *Id.* (discussing *Chalker v. Birmingham & Nw. R.R. Co.*, 249 U.S. 522 (1919)). Because the tax "impose[d] a higher rate on persons who had their principal offices out of State," and because "'the chief office of an individual *is commonly in the State of which he is a citizen*,'" the Court "concluded that the practical effect of

the provision was discriminatory." *Id.* (emphasis added; citation omitted); *cf. Healy v. Beer Inst.*, 491 U.S. 324, 336 (1989) (state law may be invalid under the Dormant Commerce Clause in some circumstances based on its "practical effect" alone). Although the Supreme Court reserved the question whether "*Chalker* should be interpreted as merely applying the Clause to classifications that are but proxies for differential treatment against out-of-state residents, or as prohibiting any classification with the practical effect of discriminating against such residents," either of those readings describe the classification here. *Hillside Dairy*, 539 U.S. at 67. For present purposes, a classification on the basis of entry into a State—whether applied to milk or people—is analogous to a classification on the basis of the State where one's chief office is located, inasmuch as both effectively discriminate against out-of-state residents.[5]

A district court in Maine reached the same conclusion in a challenge to a similar 14-day self-quarantine mandate for anyone entering into that State. As the court explained, "[a]lthough the quarantine rule purports a certain neutrality insofar as it imposes a restriction on all who enter the state, including state residents, it

---

[5] By one measure, nearly 85 percent of travelers to Hawaii were out-of-state visitors rather than returning Hawaii residents. In 2018, the most recent year for which data is available, there were 9,761,448 total travelers to Hawaii. Of that number, only 1,487,120 (roughly 15 percent) were returning Hawaii residents. *See* Hawaii Department of Business, Economic Development & Tourism, *Visitor Statistics, Historical Visitor Statistics, Tables 6 & 11*, https://dbedt.hawaii.gov/visitor/ (last visited June 23, 2020).

effectively discriminates among members of the public in practical application."
*Bayley's Campground Inc. v. Mills*, No. 2:20-CV-00176-LEW, 2020 WL 2791797,
at *10 (D. Me. May 29, 2020), *appeal filed* (1st Cir. June 9, 2020).  And while the
*Bayley's* court eventually concluded that the challengers had not shown a likelihood
of success on the merits "at this early stage" and "without a developed factual
record," it acknowledged that they had "raised a very serious matter for judicial
resolution" and eventually "might be able to demonstrate a violation of the
Constitution."  *Id.* at *11, *12.

**B.**     The fact that the self-quarantine mandate appears to have the practical
effect of discriminating against out-of-state residents is not the end of the analysis,
however, for the Privileges and Immunities Clause "is not an absolute."  *Toomer*,
334 U.S. at 396.  It "does not preclude discrimination against nonresidents where (i)
there is a substantial reason for the difference in treatment; and (ii) the discrimination
practiced against nonresidents bears a substantial relationship to the State's
objective."  *Supreme Court of New Hampshire v. Piper*, 470 U.S. 274, 284 (1985);
*see, e.g., Saenz*, 526 U.S. at 502 ("There may be a substantial reason for requiring
the nonresident to pay more than the resident for a hunting license, or to enroll in the
state university" (citations omitted)).  And in considering whether the effective
discrimination here is sufficiently tailored, the Court should not ignore the context
of the COVID-19 pandemic.  The Constitution does not hobble States from taking

necessary, temporary measures—including quarantines—to meet a genuine emergency. *See Jacobson v. Massachusetts*, 197 U.S. 11, 29 (1905) (observing that "[a]n American citizen arriving at an American port" on a ship that had cases of yellow fever "may yet, in some circumstances, be held in quarantine against his will"); *Compagnie Francaise de Navigation a Vapeur v. Louisiana State Bd. of Health*, 186 U.S. 380, 397 (1902) (upholding Louisiana's quarantine of healthy passengers aboard a vessel during an outbreak of yellow fever against a Fourteenth Amendment challenge).

But even during a pandemic, state actions undertaken in service of the public health cannot be divorced from that end and cannot clearly infringe constitutional rights. Thus, "if a statute purporting to have been enacted to promote the public health, the public morals or the public safety, has no real or substantial relation to those objects, or is, beyond all question, a plain, palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the Constitution." *Jacobson*, 197 U.S. at 31. At a minimum, state action cannot be "exercised in particular circumstances and in reference to particular persons" in "an arbitrary, unreasonable manner." *Id.* at 28.

C.      At least based on the evidence and argument presented thus far, Hawaii's effective discrimination against out-of-state residents does not appear sufficiently tailored to ensuring public safety. Indeed, a federal court recently held

that Kentucky travel restrictions issued in the wake of the COVID-19 pandemic requiring both Kentucky and out-of-state residents who traveled into the Commonwealth to self-quarantine for 14 days impermissibly infringed on the right to interstate travel because its restrictions were inadequately "tailored to achieve the government's purpose." *Roberts v. Neace*, No. 2:20CV054 (WOB-CJS), 2020 WL 2115358, at *5 (E.D. Ky. May 4, 2020).  The same is true here: the Governor's mandate is both over- and underinclusive.

Take overinclusivity first.  *See Piper*, 470 U.S. at 285 n.19 (holding that a "markedly overinclusive" state residency requirement "does not bear a substantial relationship to the State's objective").  It is unclear why the Governor requires nearly every person traveling to Hawaii to self-quarantine for 14 days before enjoying the freedoms nearly every Hawaii resident enjoys.  Had he imposed such a burden only on residents from COVID-19 hot spots, such as New York City, this might be a different case.  But the Governor requires travelers from every corner of the Union to quarantine themselves upon arrival, even if they hail from jurisdictions (such as Alaska) that have fewer confirmed cases of COVID-19 than Hawaii does.  *See CDC, Coronavirus Disease 2019* (*COVID-19), Cases in the U.S.*[6]

---

[6]  https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html  (last visited June 23, 2020).

Conversely, Hawaii's scheme is also underinclusive.  The Governor permits every Hawaii resident who has stayed within state lines to enjoy the freedoms out-of-staters must purchase at the price of a 14-day quarantine.  It does not matter whether the resident comes from, or has traveled through, Kauai County (29 cases) or Honolulu County (568).  Hawaii Department of Health, *COVID-19: Current Situation in Hawaii*.[7]  It does not matter whether the resident has recently traveled by plane between the islands.  It does not matter whether the resident has self-quarantined recently or ever, undergone testing for COVID-19, or taken any other precautionary measures.  In general, Hawaii residents that have remained within the State since the pandemic began enjoy certain freedoms regardless of individual circumstances, including the ability to travel to Oahu to frequent bars, restaurants, museums, movie theaters, or gyms.  And even out-of-staters may break quarantine to perform "critical infrastructure functions," which covers a wide variety of occupations.  The "underinclusive" nature of the Governor's regime is another strike against it under the Constitution.  *Piper*, 470 U.S. at 285 n.19.

Moreover, the Governor could use less restrictive means to advance his interest in protecting public safety.  *See id.* at 284 & n.17 (explaining that when "deciding whether the discrimination bears a close or substantial relationship to the

---

[7] https://health.hawaii.gov/coronavirusdisease2019/what-you-should-know/current-situation-in-hawaii/ (last visited June 23, 2020).

State's objective, the Court has considered the availability of less restrictive means"

and that "the State may be required to achieve its legitimate goals without

unnecessarily discriminating against nonresidents").  To be clear, the United States

appreciates that Hawaii, unlike many other States, is generally reached by airplane,

which raises particular public-health concerns.  *See* 20-268 Opp. 6-7.  But that alone

cannot end the analysis, especially as the Governor does not subject those who travel

by air between *islands* (as opposed to between *States*) to the self-quarantine

mandate.  The Governor is also considering whether to establish "'travel corridors'

with certain international and mainland locations that have low COVID-19 case

levels."  *Id.* at 9.  All of this suggests it is possible to address the risks associated

with air travel in a manner that is less burdensome for residents of the other 49 States.

More fundamentally, it appears that a close analogue to Hawaii—Alaska—is

able to protect public health through less restrictive means.  *Cf. Holt v. Hobbs*, 574

U.S. 352, 368-69 (2015) (fact that other jurisdictions let inmates grow ½-inch beards

is relevant to determining whether less-restrictive means are for accommodating

prisoner's religious exercise).  Alaska, like Hawaii, has a relatively low number of

COVID-19 cases.  Alaska, like Hawaii, is typically reached by airplane.  Alaska,

like Hawaii, imposes a 14-day self-quarantine mandate on those entering the State.

14

Governor Mike Dunleavy, *COVID-19 Mandate* § II (June 5, 2020).[8]  But Alaska, unlike Hawaii, provides out-of-state residents with alternatives to the self-quarantine: (i) they may produce test results showing they tested negative for COVID-19 shortly before departing for Alaska, (ii) they may test for COVID-19 upon arrival in Alaska and self-quarantine until they receive a negative test result, or (iii) they may provide evidence that they have tested positive for COVID-19 in the past and have recovered.  *Id.*

In light of Alaska's regime, it is incumbent on the Governor to demonstrate why Hawaii cannot adopt a similar framework that both promotes public safety while not denying out-of-state residents the same freedoms in-state residents enjoy. Although the Governor has indicated his intention to adopt a similar plan, he has not done so yet.[9]  The fact that "testing is relatively costly" is no explanation; as the Governor admits, travelers could "bear the expense" in order to avoid the self-quarantine mandate.  *See* Declaration of Sarah Y. Park ¶ 26, ECF No. 19-2, *For Our Rights* (No. 1:20-cv-00268-DKW-RT).  Hawaii's "insufficient laboratory capacity" deserves more consideration, *id.* ¶ 25, but even that does not answer why thousands

---

[8]  https://covid19.alaska.gov/wp-content/uploads/2020/06/06152020-COVID-MANDATE-010.pdf.

[9]  See Ryan Kalei Tsuji et al, *VIDEO: Gov. David Ige and Aloha United Way's Lisa Kimura Join the COVID-19 Care Conversation*, STAR ADVERTISER (June 22, 2020), https://www.staradvertiser.com/2020/06/22/breaking-news/watch-live-gov-david-ige-and-aloha-united-ways-lisa-kimura-join-the-covid-19-care-conversation/.

of untested Hawaii residents may travel to Oahu to visit museums, eat at bars and restaurants, exercise at a gym of their choosing, and engage in other activities, while out-of-staters who tested *negative* for COVID-19 before entering Hawaii cannot engage in the same activities without unduly risking COVID-19 spread.  Ultimately, it appears the Governor simply wants to take a more cautious approach than his Alaskan counterpart: he is concerned about "uncertainty" surrounding the accuracy of antibody testing, the risk that such testing would fail to reveal infections from traveling, and the fact Alaska has seen a rise in new cases since relaxing its self-quarantine mandate.  *Id.*; 20-268 Opp. 9.  But that preference for a more cautious approach, standing alone, cannot justify the Governor's effective discrimination against out-of-state residents at this time.

In short, while Hawaii's Governor may take reasonable steps to protect public safety during the COVID-19 pandemic, he must show that any measure imposed that has the practical effect of discriminating against out-of-staters under the Privileges and Immunities Clause bears a substantial relationship to that goal.  As of now, he has not done so.

//

//

//

//

## CONCLUSION

The Court should hold that the Hawaii Governor's sweeping 14-day self-quarantine mandate, which effectively discriminates against out-of-state residents, likely violates Article IV's Privileges and Immunities Clause.

DATED: June 23, 2020, at Honolulu, Hawaii.

Respectfully submitted,

ERIC S. DREIBAND
Assistant Attorney General

ALEXANDER V. MAUGERI
Deputy Assistant Attorney General

KENJI M. PRICE
United States Attorney

   /s/ Sydney Spector
By_____
   SYDNEY SPECTOR
   Assistant United States Attorney


   Attorneys for UNITED STATES OF AMERICA