JAMES HOCHBERG (HI Bar No. 3686)
ATTORNEY AT LAW, LLLC
700 Bishop St., Ste. 2100, Honolulu, HI 96813
Telephone: (808) 256-7382
E-mail: jim@jameshochberglaw.com

HARMEET DHILLON (*pro hac vice*)
MARK P. MEUSER (*pro hac vice*)
GREGORY R. MICHAEL*
DHILLON LAW GROUP
177 Post Street, Suite 700
San Francisco, CA 94108
Telephone: (415) 433-1700
E-mail: harmeet@dhillonlaw.com
*(Application for Admission *pro hac vice* forthcoming)

Counsel for Plaintiffs

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HOLLY CARMICHAEL; TIMOTHY AARON CARMICHAEL; BROOKE MCGOWAN; and RUSSELL HIRSCH; | Case No. 1:20-cv-00273 JAO-WRP |
| *Plaintiffs*, | **REPLY IN SUPPORT OF PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER AND FOR ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE** |
| v. | |
| DAVID IGE, in his official capacity as Governor of the State of Hawaii; | Judge: Hon. Jill A. Otake |
| *Defendant*. | Date: July 2, 2020 |
| | Time: 11:00 a.m. |
| | No Trial Date |

1

**TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................................1

ARGUMENT ................................................................................................................1

   I.     PLAINTIFFS HAVE STANDING TO ASSERT THEIR U.S.
         CONSTITUTIONAL RIGHT TO TRAVEL TO AND FROM HAWAII
         WITHOUT UNDUE BURDEN, AS EACH HAS SUFFERED ACTUAL,
         CONCRETE, AND PARTICULARIZED HARM. ......................................................1

   II.    PLAINTIFFS HAVE SATISFIED ALL REQUIREMENTS FOR A
         TEMPORARY RESTRAINING ORDER. ..................................................................3

      A.     Plaintiffs' claims are likely to prevail on the merits. ................................4

          1.     *Jacobson* does not apply to this case. ..........................................4

          2.     Even if applicable, *Jacobson* does not justify a 14-day quarantine. ............5

          3.     Right to Travel ....................................................................7

          4.     Substantive Due Process ..........................................................10

      B.     Absent immediate judicial relief, Plaintiffs will continue to suffer irreparable
          harm. ................................................................................................11

      C.     The balance of equities tips sharply in the Plaintiffs' favor. ................11

      D.     The relief sought by Plaintiffs is in the public interest. ........................12

   III.   MOOTNESS ................................................................................................13

CONCLUSION ................................................................................................................15

## TABLE OF AUTHORITIES

**Case**                                                                 **Page(s)**

## CASES

*Atay v. Cnty. of Maui*,
   842 F.3d 688 (9th Cir. 2016). ....................................................................... 3

Attorney General of New York v. Soto–Lopez,
   476 U.S. 898 (1986) ...................................................................................... 8

*Bayley's Campground Inc. v. Mills*,
   No. 2:20-CV-00176-LEW, 2020 WL 2791797 (D. Me. May 29, 2020)................. 4

*Bray v. Alexandria Women's Health Clinic*,
   506 U.S. 263 (1993) ...................................................................................... 7

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
   508 U.S. 520 (1993) ...................................................................................... 5

*City of Mesquite v. Aladdin's Castle, Inc.*,
   455 U.S. 283 (1982) .................................................................................... 15

*College Republicans at San Francisco State University v. Reed*,
   523 F. Supp. 2d 1005 (N.D. Cal. 2007). ...................................................... 12

*Crandall v. Nevada*,
   73 U.S. 35 (1868) .......................................................................................... 7

*Davidson v. Kimberly-Clark Corporation*,
   889 F.3d 956 (9th Cir. 2018). ........................................................................ 2

*Dunn v. Blumstein*,
   405 U.S. 330 (1972) .................................................................................... 10

*Elrod v. Burns*,
   427 U.S. 347 (1976) .................................................................................... 11

*First Baptist Church v. Kelly*,
   No. 20-1102-JWB, 2020 WL 1910021 (D. Kan. Apr. 18, 2020). ....................... 5

*Franchesci v. Yee*,
   887 F.3d 927 (9th Cir. 2018). ...................................................................... 10

*Jacobson v. Massachusetts*,
   197 U.S. 11 (1905) ........................................................................................ 4

*Jones v. Helms*,
   452 U.S. 412 (1981) .................................................................................... 13

*Kent v. Dulles*,
   357 U.S. 116 (1958) .................................................................................... 10

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ...................................................................................... 2

*Nat'l Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown*,
  567 F.3d 521 (9th Cir. 2009). ................................................................... 3

*Northeastern Florida Contractors v. Jacksonville*,
  508 U.S. 656 (1993)............................................................................... 15

*Robinson v. Marshall*,
  No. 2:19CV365-MHT, 2020 WL 1847128 (M.D. Ala. Apr. 12, 2020). ................ 5

*Saenz v. Roe*,
  526 U.S. 489 (1999).............................................................................. 4, 9

*Sanchez v. City of Fresno*,
  914 F. Supp. 2d 1079 (E.D. Cal. 2012) ...................................................... 8

*Slaughter–House Cases*,
  16 Wall. 36, 21 L.Ed. 394 (1872). .......................................................... 10

*South Bay United Pentecostal Church v. Newso*m,
  140 S. Ct. 1613 (2020) (Mem.)............................................................. 4, 5

*Spokeo, Inc. v. Robins*,
  136 S.Ct. 154 (2016)............................................................................... 1

*Stormans, Inc. v. Wiesman*,
  794 F.3d 1064 (9th Cir. 2015). .............................................................. 10

*United States v. Guest*,
  383 U.S. 745 (1941)............................................................................... 10

*United States v. W.T. Grant Co.*,
  345 U.S. 629 (1953).............................................................................. 15

**INTRODUCTION**

Plaintiffs are four American citizens whose constitutionally protected right to travel continues to be violated by Governor Ige with no clear end in sight. In response to Plaintiffs' claims of federal constitutional violations arising from Governor Ige's impermissible interference with their travel, equal protection and liberty interests, the state has done its best to defend a grossly overbroad policy that it now admits must change – but not just yet. The deprivation of these fundamental rights, which plaintiffs have standing to bring, is ongoing and causing irreparable harm; the balance of harms tips sharply in favor of plaintiffs, and given the government's admissions in opposition, a TRO should issue.

At the request of this Court, Plaintiffs address issues of standing and mootness. As discussed below, Plaintiffs have shown that they have satisfied the standard for a temporary restraining order and that the Fifth and Fourteenth Amendments protect Plaintiffs' right to travel.

**ARGUMENT**

I.     **PLAINTIFFS HAVE STANDING TO ASSERT THEIR CONSTITUTIONAL RIGHT TO TRAVEL WITHOUT UNDUE BURDEN, AS EACH HAS SUFFERED ACTUAL, CONCRETE, AND PARTICULARIZED HARM.**

Plaintiffs are Americans who wish to travel to and from Hawai'i without undue burdens being imposed by the government on their fundamental rights. Courts have recognized standing for plaintiffs with far less individualized harm than each plaintiff has demonstrated here.

The "irreducible constitutional minimum" for Article III standing consists of three elements. "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016). Of these three criteria, Governor

Ige only challenges that Plaintiffs suffered an injury in fact; he likens their injury to an "inconvenience" that is not concrete or particularized. Opp'n Br. 8.

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S.Ct. at 1548 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "For injunctive relief, which is a prospective remedy, the threat of injury must be 'actual and imminent, not conjectural or hypothetical.'" *Davidson v. Kimberly-Clark Corporation*, 889 F.3d 956, 967 (9th Cir. 2018).

Plaintiffs Holly and Aaron Carmichael are California residents and beneficial owners of a condominium in Maui, Hawai'i. Carmichael Dec. ¶ 1. The Carmichaels made travel arrangements for a trip with their family to Maui to stay in their condominium on April 1, 2020. After learning of the Governor's mandatory 14-day quarantine policy and the substantial burdens it imposed, Carmichael Dec. ¶¶ 4-10, they rescheduled their trip for June 2020. Carmichael Dec. ¶ 7. However, their plans and travel arrangements were substantially burdened again as the Governor's 14-day quarantine policy isn't scheduled to lift until July 31, 2020—at the earliest.

Plaintiff Brooke McGowan's daughter lives on the mainland. McGowan Dec. ¶ 3. Her grandmother lives on the mainland too. and suffers from rapidly deteriorating Alzheimer's disease. McGowan Dec. ¶ 5. Plaintiff McGowan planned travel to the mainland to visit her daughter and her grandmother in summer 2020. McGowan Dec. ¶ 5. However, upon return from visiting her relatives on the mainland, Plaintiff McGowan would have to quarantine for 14 days. This quarantine period makes it functionally impossible for Plaintiff McGowan to travel to the mainland to visit her daughter and provide care for her grandmother as needs may arise.

Plaintiff Hirsch is a resident of Nevada who owns a house in Kailua and a farm in Hilo. But for Defendant's mandatory 14-day quarantine period, Plaintiff Hirsch would travel to both Kailua and Hilo to attend to his personal business. Hirsch Dec. ¶ 7. However, the quarantine period makes this impossible. Hirsch Dec. ¶ 7. Plaintiff Hirsch can travel to one of his properties, but he cannot travel to both during a short visit to Hawaii, and could not attend to business at *either* property while under strict quarantine. Plaintiff Hirsch's residence in Kailua is in need of electrical repairs. Hirsch Dec. ¶ 4. He also needs to tend to his fruit trees on his farm in Hilo. Hirsch Dec. ¶ 4. If Plaintiff Hirsch travels to his farm in Hilo, under Defendant's policy, he must self-quarantine there for two weeks before he is able to travel to his residence in Kailua. As such, his right to travel to his properties is severely burdened and his visit dictated by the state to exceed 14 days. Mr. Hirsch's daughter is a recent graduate, and he would like to celebrate her graduation with her in the place where she grew up—Hawaii. Hirsch Dec. ¶ 5. However, the Governor's 14-day quarantine period substantially burdens Mr. Hirsch's family plans to travel to Hawaii to celebrate her graduation. Hirsch Dec. ¶ 7.

"As a general rule, in an injunctive case this court need not address standing of each plaintiff if it concludes that one plaintiff has standing." *Atay v. Cnty. of Maui*, 842 F.3d 688, 696 (9th Cir. 2016) (quoting *Nat'l Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown*, 567 F.3d 521, 523 (9th Cir. 2009)). While at this stage of litigation it is not necessary to prove standing for *each* plaintiff, they each, independently, have suffered an actual, concrete, and particularized injury in fact and as such, have standing to maintain this action and TRO request.

## II. PLAINTIFFS HAVE SATISFIED ALL REQUIREMENTS FOR A TEMPORARY RESTRAINING ORDER.

Plaintiffs discussed the standards for this Court's entry of a temporary restraining order in their opening brief at p. 2, and the standard is not disputed, though Plaintiffs' satisfaction of it is.

In the face of Plaintiffs' having raised a *prima facie* case for satisfying all the elements required for a temporary restraining order, Governor Ige fails to rebut that case, as summarized below.

### A.      Plaintiffs' claims are likely to prevail on the merits.

Relying heavily on *Jacobson v. Massachusetts*, 197 U.S. 11, 38 (1905), Governor Ige argues that his 14-day mandatory quarantine policy is constitutionally permissible so long as it is not "arbitrary" or "unreasonable." The Governor goes on to cite Justice Roberts' memorandum order in *South Bay United Pentecostal Church v. Newso*m, 140 S. Ct. 1613 (2020) (Mem.). Neither case provides justification for Defendant's violations of fundamental rights.

### 1.      *Jacobson* does not apply to this case.

Federal trial and appellate courts are divided as to *Jacobson*'s applicability to COVID-19 public health orders. *Jacobson was* decided prior to the recognition of many of the rights asserted in this case, and its application is not without limits. In *Bayley's Campground Inc. v. Mills*, a federal district court held that *Jacobson* did not apply to right to travel cases because "when the Supreme Court elaborates a new standard for analyzing a constitutional claim, we use that most recent formulation, rather than the framework from a decision for a different constitutional claim, made by a different claimant, in a different state, facing a different public health emergency in a different century." *Bayley's Campground Inc. v. Mills*, No. 2:20-CV-00176-LEW, 2020 WL 2791797, at *8 (D. Me. May 29, 2020), *reconsideration denied*, D. Me. No. 2:20-CV-00176-LEW, 2020 WL 3037252 (D. Me. June 5, 2020). In that case, the court instead applied the analysis set forth in *Saenz v. Roe*, 526 U.S. 489, 498 (1999). In *Saenz*, the Court held that a California law that denied new California residents benefits of a state program violated the Privileges and Immunities Clause of the 14th Amendment.

In the context of religious liberty, a federal district court in Kansas held that *Jacobson* did "not provide the best framework in which to evaluate the Governor's executive orders…." *First Baptist Church v. Kelly*, No. 20-1102-JWB, 2020 WL 1910021, at *6 (D. Kan. Apr. 18, 2020). Instead, the court applied the traditional tiered analysis applied by the Supreme Court in *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993) (holding that city ordinance dealing with ritual slaughter of animals violated First Amendment).

> 2.      **Even if applicable, *Jacobson* does not justify a 14-day quarantine.**

Even if assuming that *Jacobson* applies to restrictions on the right to travel, which Plaintiffs contend it does not, neither *Jacobson* nor *South Bay United Pentecostal Church* gives Governor Ige limitless power to restrict constitutional rights. First, while extending deference to executive branch officials, Justice Roberts' concurring opinion in *South Bay* recognizes limitations to *Jacobson*. He writes, "when those officials "undertake to act in areas fraught with medical and scientific uncertainties, their latitude must be especially broad. [*citing Marshall v. United States*, 414 U.S. 417, 427 (1974).] Where those broad limits are not exceeded, they should not be subject to second-guessing…" *South Bay United Pentecostal Church*, 140 S.Ct. at 1613-145. Here, the Governor has well exceeded these broad limits with his overbroad decrees.

Governor Ige's substantial burdening of Plaintiffs' constitutionally protected right to travel fails scrutiny. In *Robinson v. Marshall*, a federal district court in Alabama reasoned that the state's COVID-19-related restriction on elective surgeries violated women's fundamental right to abortion. The court in *Robinson* reasoned that the *Jacobson* standard was not solely dispositive in the abortion context; the court reasoned that Alabama violated *Roe* and *Casey* by creating an undue burden on a fundamental right. *See Robinson v. Marshall*, No. 2:19CV365-MHT, 2020 WL 1847128, at *10 (M.D. Ala. Apr. 12, 2020).

The same could be said of Governor Ige, who remarkably argues in opposition that the bucket of rights associated with the constitutional right to travel are not fundamental rights. Opp'n Br. 18-19. "The word 'travel' is not found in the text of the Constitution. Yet the 'constitutional right to travel from one State to another' is firmly embedded in our jurisprudence." *Saenz v. Roe*, 526 U.S. at 498. Whether violating a fundamental right to an abortion or a constitutionally protected right to travel, *Jacobson*—alone—is not dispositive.

And if *Jacobson* were to apply, even in tandem with another standard applied in a similar manner as in *Robinson* (abortion rights), Governor Ige's proclamations do not have a real or substantial relation to the protection of the public health and safety. The Governor's quarantine is overly broad. "In Hawaii, there have been 17 reported COVID-19 deaths thus far, and no reported deaths since May 3 (Maui), long enough for any cases in the last 3-4 weeks to become fatal." Hay Dec. ¶ 30. There have only been 872 total COVID-19 cases in Hawaii. Hochberg Dec. ¶2. Of the 75,478 people who have been tested for COVID-19 in Hawaii, only 1.2% have tested positive. Hochberg Dec. ¶11. The overwhelming number of Hawaiian are not infected by COVID-19. Yet, the Governor's 14-day quarantine policy treats all Americans as if they are ill and contagious—even Americans residing in localities that like Hawaii have very few, if any, cases of COVID-19.

Governor Ige argues "because these [challenged] measures are the most effective means to combat the spread of COVID-19, they bear a 'real' and 'substantial relation' to protecting the people of Hawai'i and easily satisfy the *Jacobson* standard." Opp'n Br. 15. Oddly, even as Governor Ige claims that Hawaii faces a COVID-19 crisis justifying his use of executive orders that deprive Americans of their constitutional right to travel, he also boasts that Hawaii has already "flattened the curve and now has one of the country's lowest rates of COVID-19

infection and death." Opp'n Br. 6. This logical inconsistency bears scrutiny—if Hawaii is one of the states least impacted by Coronavirus in the U.S., why does Governor Ige intend to continue the non-narrowly tailored, 14-day lockdown for travelers, for at least month of July (and perhaps beyond), thereby continuing to burden Plaintiffs' constitutionally protected right to travel?

Governor Ige's emergency orders lack a "real or substantial relation to the protection of the public health and safety" and as such, *Jacobson* does not apply. Governor Ige fails his burden to show in response to Plaintiffs' prima facie showing, that a 14-day quarantine is *narrowly tailored* to satisfy a compelling government interest. Whatever one may conclude as to whether suppressing Hawaii's already very low infection rate even further is a compelling government interest, it is abundantly clear that the Governor's orders are not narrowly tailored to achieve such interest. Indeed, it is difficult to conceive how they could be *less* narrowly tailored.

### 3.      Right to Travel

The Constitution protects the right to travel from state to state. *See Crandall v. Nevada*, 73 U.S. 35, 44 (1868). Governor Ige relies heavily on *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263 (1993) as the standard for right to travel claims. Opp'n Br. 15. Applying *Bray*, Governor Ige asserts that because he has neither erected an actual barrier to interstate movement nor treated interstate travelers differently from intrastate travelers, he has not violated Plaintiffs' right to travel. Opp'n Br. 15. But this assertion is disingenuous in the face of Governor Ige's comment to the *Associated Press* on May 4 – weeks before this lawsuit was filed – that the *very purpose* of his Proclamations was to erect a barrier to interstate movement and to radically reduce the number of visitors to Hawai'i. Hochberg Dec. ¶15 ("We are the most isolated community on the planet," Ige told The Associated Press last week. "As such, we've got to be more self-reliant, but we also had the opportunity to enact a quarantine, make it meaningful and

most importantly, *know that we could really dramatically reduce the number of visitors we get*.")
(comments of Governor Ige embedded in video interview in article).

The Governor argues that even if his 14-day quarantine is a barrier, it is "narrowly tailored." Opp'n Br. 16. Governor Ige is mistaken; there are far less restrictive means to protect public health than his mandatory quarantine. Indeed, it is "far more logical to conclude that lockdown measures caused more deaths to occur." Hay Dec. ¶ 24. "It is telling that we have increasing evidence that COVID-19 was all over the world (Italy, France, Spain, California, Germany, China, Korea and many other countries) months and months before the lockdowns. The lockdowns can have no effect, if everyone has already been exposed." Hay Dec. ¶23.

*Bray* is *not* the only standard courts apply to right to travel cases, and while the Governor does cite to *Sanchez v. City of Fresno*, 914 F. Supp. 2d 1079 (E.D. Cal. 2012) to support his argument that a 14-day quarantine on all traveler to Hawaii is not discriminatory, he omits to cite the standard *applied* by *Sanchez*. "A state law implicates the constitutional right to travel when it actually deters such travel, when impeding travel is its primary objective, or when it uses any classification that serves to penalize the exercise of that right." *Sanchez*, 914 F. Supp. 2d at 1109 (citing *Attorney General of New York v. Soto–Lopez*, 476 U.S. 898, 903 (1986)). Governor Ige has admitted, and cannot now credibly dispute, that impeding travel was the primary objective of his 14-day quarantine orders, and that such orders serve to burden the right to travel.

Plaintiffs' right to travel is violated under both *Bray* and *Sanchez*. Defendant is treating interstate travelers differently from intrastate travelers. The 14-day quarantine only applies to interstate travel, not intrastate travel. Opp'n Br. 17. As such, Americans already in Hawaii may travel from island to island, but Americans may not travel from the mainland to Hawaii without a mandatory 14-day quarantine whose admitted design is to deter them from coming.

The 14-day quarantine certainly has a deterrent effect on interstate travel, satisfying the standard set out in *Sanchez* too. Plaintiffs Carmichael have been unable to vacation at their condominium in Maui. Carmichael Dec. ¶ 2. Plaintiff McGowan has been unable to travel to the mainland to care for her ill grandmother because of the mandatory quarantine upon her return. McGowan Dec. ¶ 7. The 14-day quarantine has also deterred Plaintiff Hirsch from traveling to his properties in Hilo and Kailua to attend to important business there. Hirsch Dec. ¶ 7. The quarantine stopped "tens of thousands of tourists" every day from traveling to Hawaii. Hochberg Dec. ¶15. The purpose of the 14-day quarantine was to "dramatically reduce the number of visitors" to the island. Hochberg Dec. ¶15.

Governor Ige alleges, "as the disease does not discriminate, neither does the policy: It applies to visitors and residents alike." Opp'n Br. 16. But this truism misses the point. The proper comparison is not visitors versus residents. The standard applied in *Sanchez* says disparate treatment based on "any classification" is a violation of the constitutionally protected right to travel. Americans traveling from the mainland are subject to Governor Ige's 14-day mandatory quarantine, while Americans traveling from Hawaii to the mainland or from island to island are not. While the disease may not discriminate, the state of Hawai'i most assuredly does.

Governor Ige also cites to *Saenz v. Roe*. However, *Saenz* does not offer the support Defendant seeks. In *Saenz*, the Court writes, "The right to travel embraces three different components: the right to enter and leave another State; the right to be treated as a welcome visitor while temporarily present in another State; and, for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State." *Saenz*, 526 U.S. at 490. The *Saenz* court also held, "the right of 'free ingress and regress to and from' neighboring States, which was expressly mentioned in the text of the Articles of Confederation,[13] may simply

have been "conceived from the beginning to be a necessary concomitant of the stronger Union the Constitution created." *Id.* at 501 (citing *United States v. Guest*, 383 U.S. 745, 758 (1941)). Hawai'i, as part of that Union since 1959, must in turn honor all of its constitutional rights.

Plaintiffs do not benefit from the "right of 'free ingress and regress to and from neighboring States." They are not treated as a "welcomed visitor." They cannot leave quarantine to enjoy Hawaii for 14 days. They are treated as pariahs subject to a virtual travel ban.

### 4.    Substantive Due Process

Governor Ige erroneously contends that Plaintiffs have not been deprived a fundamental right. Opp'n Br. 17. The Governor cites to *Franchesci v. Yee*, 887 F.3d 927 (9th Cir. 2018), asserting that substantive due process only protects a narrow few—traditionally recognized— liberty interests; and *Stormans, Inc. v. Wiesman*, 794 F.3d 1064 (9th Cir. 2015) to express courts' reluctance in expanding the scope of liberty interests protected by substantive due process.

These cases are totally irrelevant to the question whether the right to travel is a fundamental right. The right to travel is a fundamental right, it is a deeply rooted right, and courts routinely hold this: "The right to travel is a part of the 'liberty' of which the citizen cannot be deprived without the due process of law under the Fifth Amendment." *Kent v. Dulles*, 357 U.S. 116, 125 (1958). "A citizen of the United States has a perfect constitutional right to go to and reside in any State he chooses, and to claim citizenship therein, and an equality of rights with every other citizen; and the whole power of the nation is pledged to sustain him in that right." *Saenz*, 526 U.S at 503–04 (1999) (citing *Slaughter–House Cases*, 16 Wall. 36, 21 L.Ed. 394 (1872)). "Freedom to travel throughout the United States has long been recognized as a basic right under the Constitution." *Attorney Gen. of New York v. Soto-Lopez*, 476 U.S. 898, 901 (1986)(quoting *Dunn v. Blumstein,* 405 U.S. 330, 338 (1972)).These are just a few of the many

case that recognize the right to travel as a constitutionally protected right under the Privileges and Immunities Clause of Article IV, the Due Process Clause of the Fifth Amendment, and the Privileges and Immunities Clause of the Fourteenth Amendment.

The Governor then argues that Plaintiffs raise a federal constitutional claim based on a violation of state law. To be clear, Plaintiffs raise federal constitutional claims under the Fifth and Fourteenth Amendments to the United States Constitution. Plaintiffs do assert that the Governor has exceeded his power under state law too; however, this factual predicate is background and not directly pertinent to the determination of this motion.

**B.      Absent judicial relief, Plaintiffs will continue to suffer irreparable harm.**

The deprivation of a constitutionally protected right inexorably creates irreparable harm. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) (holding, "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury"). Every day that Plaintiffs' right to travel is impermissibly burdened by Governor Ige, is another day of irreparable injury. It is not for the state to determine whether the reason for the travel is important in the state's eyes – as Governor Ige seems to argue. It is for the state to tailor its burdens on any travel by US citizens, as narrowly as possible.

Without an injunction preventing Defendant from further enforcing his Proclamations, Plaintiffs will suffer irreparable harm in the form of deprivation of fundamental Constitutional freedoms. Plaintiffs' irreparable injuries cannot adequately be compensated by damages or any other remedy available at law – they cannot get back their time, or their freedom.

**C.      The balance of equities tips sharply in the Plaintiffs' favor.**

In cases implicating constitutional rights, "the 'balancing of the hardships' factor also tends to turn on whether the challengers can show that the regulations they attack are

substantially overbroad." *College Republicans at San Francisco State University v. Reed*, 523 F. Supp. 2d 1005, 1011 (N.D. Cal. 2007). Given Plaintiffs' showing of the facially and as-applied invalidity of Defendant's overly broad Proclamations, Plaintiffs necessarily have shown that leaving the 14-day quarantine in place for even a brief period of time would irreparably violate Plaintiffs' right to travel to Hawaii. By contrast, temporarily enjoining Defendant's enforcement of the 14-day quarantine will not result in hardship to Defendant, who is in a position to adopt, at least on an interim basis, more narrowly tailored solutions that advance public health without unduly violating the constitutionally protected right to travel. The Constitution demands no less.

      **D.     The relief sought by Plaintiffs is in the public interest.**

It is certainly in the public's *best* interest for the state of Hawai'i to allow its own residents to travel, associate, enjoy constitutionally protected freedoms, and generally be free from the restraint of the government. This important interest applies to all residents of Hawaii, as well all citizens from other states and elsewhere.

The overwhelming majority of Hawai'i residents are not infected with coronavirus. Hawaii has a population of 1,415,872 (https://www.census.gov/quickfacts/HI). According to the official website for the State of Hawai'i Department of Health, Disease Outbreak Control Division (DOCD), coronavirus statistics are (as of 12:00 noon on July 27, 2020) as follows: There are 866 total cases and 18 deaths (https://health.hawaii.gov/coronavirusdisease2019/what-you-should-know/current-situation-in-hawaii/). This amounts to an infection rate of less than 1% (0.058%) of the Hawai'i population. In other words, a total of 1,415,055 Hawai'i residents are *not* infected with coronavirus. Similarly, the United States has a population of 328,239,523, with an infection rate of 0.75%, with 325,780,051 residents who are *not* infected with coronavirus.

Whether looking at Hawaii or looking at the entire U.S., 99.9%+ of the overall population is *not* infected with coronavirus. (https://www.census.gov/quickfacts/fact/table/US/PST045219).

Governor Ige argues that the right to travel may be curtailed, drawing distinctions among interstate travel and intrastate travel. But along with the right to travel comes the freedom of movement and freedom of access, which have no bounds. As decided by the Supreme Court, "[t]he "right to travel …embraces at least three different components. It protects the right of a citizen of one State to enter and to leave another State, the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State." *Saenz*, 526 U.S. at 500. "The right to travel has been described as a privilege of national citizenship, and as an aspect of liberty that is protected by the Due Process Clauses." *Jones v. Helms*, 452 U.S. 412, 418–19 (1981). The balance of equities clearly favors Plaintiffs.

**III.     PLAINTIFFS' CLAIMS ARE NOT MOOT.**

In a press conference on June 24, 2020 (after this lawsuit was filed), Governor Ige previewed a new COVID-19 testing program that the government says will serve as an alternative to the mandatory 14-day quarantine for out of state travelers, and will be available on August 1, 2020. Hochberg Dec. ¶ 16. He has yet to make any formal legal order concerning this. Hochberg Dec. ¶ 18. According to the Governor's latest plan, travelers with approved Covid-19 tests taken within 72 hours of their trip to Hawaii will not have to quarantine for fourteen days. Hochberg Dec. Ex.6. Governor Ige has expressed his intention that this program is subject to rescission if there is an increase in new cases. Hochberg. Dec. Ex. 6.

Starting on June 22, 2020, the Hawaii legislature began work on proposed legislation (HB2502 HD1 SD1) to authorize coronavirus testing of out of state travelers via new authority at

the Department of Health (DOH). This legislation authorizes, but does not require, the DOH to undertake screening, testing, contract tracing and isolation of persons traveling to Hawaii. Hochberg Dec. ¶ ¶ 20, 29, Ex. 6.5. It bears noting that the current draft of HB2502 HD 1 has an effective date of July 1, 2050, *over thirty years from now*. Hochberg Dec. ¶ ¶ 39, 20, Ex. 6.5.

Passage of HB2502 is far from a guarantee. There are interim deadlines that if missed will prevent HB 2502 from passing. Hochberg Dec. ¶ 33, Ex. 10. The Senate has to "deck" HB2502 after a hearing by July 2nd. Hochberg Dec. ¶ 34, Ex. 10. There is a one-day recess on July 7th, and the Senate has to pass HB2502 on 3rd reading by the Second Crossover deadline of Wednesday July 8th. Hochberg Dec. ¶ 35, Ex. 10. There is a one-day recess on July 9th and on July 10 the legislature is scheduled to adjourn *sine die*. Hochberg Dec. ¶ 36, Ex. 10.

The legislature will have to work rapidly to first amend the proposed bill, and then to pass that amended bill by July 10th. Hochberg Dec. ¶ 37. HB2502 recognizes that the DOH will have to make new administrative rules to implement the new authority, but gives the Department of Health until June 20, 2022 to do so. However, it requires interim rules to be adopted by October 1, 2020. If HB2502 passes (with an amended effective date), there will be no administrative rules under which the DOH may legally implement the authorities given to it by HB2502 until rules are written, possibly in October 2020. Hochberg Dec. ¶ 38, Ex. 7, 8, and 9. Given the uncertainty of passage, the lengthy implementation timeline, Defendant's press conference announcing an alternative to the 14-day mandatory quarantine gives Plaintiffs zero assurances that their constitutionally-protected, fundamental right to travel will be restored soon. Further, even if Defendant's timeline for implementation is revised, HB2502 would not restore Plaintiffs' constitutionally protected rights today or for at least a month—at the earliest.

Any change Governor Ige may make has no effect on the justiciability of Plaintiffs' claims as he may reinstate his decrees at any time. "It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.… In this case the city's repeal of the objectionable language would not preclude it from reenacting precisely the same provision if the District Court's judgment were vacated." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982).

In applying this "well settled" rule, the Court in *Northeastern Florida Contractors v. Jacksonville* held that changing language does not necessarily vitiate the harm: "Nor does it matter that the new ordinance differs in certain respects from the old one. *City of Mesquite* does not stand for the proposition that it is only the possibility that the *selfsame* statute will be enacted that prevents a case from being moot; if that were the rule, a defendant could moot a case by repealing the challenged statute and replacing it with one that differs only in some insignificant respect." *Northeastern Florida Contractors v. Jacksonville*, 508 U.S. 656, 662 (1993).

Since the Governor is free to "return to his old ways" there "is a public interest in having the legality of the practices settled [which] militates against a mootness conclusion." *United States v. W.T. Grant Co.*, 345 U.S. 629, 632-33 (1953). *Grant* also notes that "The burden [on the defendant to prove they will not return to old ways] is a heavy one" *Id*. at 633.

## CONCLUSION

Plaintiffs respectfully request that the Court grant their application.

Date: June 29, 2020

Respectfully submitted,

DHILLON LAW GROUP, INC.

By:     /s/ Harmeet K. Dhillon
        Harmeet K. Dhillon
        Mark P. Meuser

JAMES HOCHBERG, AAL, LLLC
James Hockberg

Attorneys for Plaintiffs

# CERTIFICATE OF SERVICE

I hereby certify that, on the dates and by the methods of service noted below, a true and correct copy of the foregoing filed document was served on the following via email at their last known email addresses indicated below

William J. Winhoff, Esq.        Bill.J.Wynhoff@hawaii.gov
Craig Y. Iha, Esq.                craig.y.iha@hawaii.gov
State of Hawaii
Department of the Attorney General
425 Queen Street
Honolulu, HI 96813
Attorney for Defendant


Date: June 29, 2020          DHILLON LAW GROUP, INC.

                      By:    /s/ Harmeet K. Dhillon
                             Harmeet K. Dhillon
                             Mark P. Meuser

                             JAMES HOCHBERG, AAL, LLLC
                             James Hockberg

                             Attorneys for Plaintiffs