JAMES HOCHBERG (HI Bar No. 3686)
ATTORNEY AT LAW, LLLC
700 Bishop St., Ste. 2100, Honolulu, HI 96813
Telephone: (808) 256-7382
E-mail: jim@jameshochberglaw.com

HARMEET DHILLON*
MARK P. MEUSER*
DHILLON LAW GROUP
177 Post Street, Suite 700
San Francisco, CA 94108
Telephone: (415) 433-1700
E-mail: harmeet@dhillonlaw.com
*pro hac vice*

Counsel for Plaintiffs

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HOLLY CARMICHAEL; TIMOTHY AARON CARMICHAEL; BROOKE MCGOWAN; and RUSSELL HIRSCH;<br><br>Plaintiffs,<br><br>v.<br><br>DAVID IGE, in his official capacity as Governor of the State of Hawaii;<br><br>*Defendant*. | Case No. 1:20-cv-00273<br><br>FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

> Freedom of movement across frontiers in either direction, and inside
> frontiers as well, was a part of our heritage. Travel abroad, like travel
> within the country, may be necessary for a livelihood. It may be as close
> to the heart of the individual as the choice of what he eats, or wears, or
> reads. Freedom of movement is basic in our scheme of values.

Justice William O. Douglas, Opinion in *Kent v. Dulles*, 357 U.S. 116, 126 (1958).

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.      Plaintiffs, HOLLY LYNN CARMICHAEL (hereinafter referred to as "Holly Carmichael"); TIMOTHY AARON CARMICHAEL (hereinafter referred to as "Aaron Carmichael") (Holly Carmichael and Timothy Carmichael hereinafter collectively referred to as "Carmichaels"); BROOKE MCGOWAN (hereinafter "McGowan"); and RUSSELL HIRSCH (hereinafter "Hirsch") (collectively referred to herein as "Plaintiffs"), by and through their undersigned counsel file this Complaint for Declaratory and Injunctive Relief against David Ige in his official capacity as the Governor of the State of Hawaii (hereinafter "Defendant"). Plaintiffs aver as follows:

## PARTIES

2.      Plaintiff Holly Carmichael is an adult resident of the State of California (who together with her husband Plaintiff Aaron Carmichael are the co-trustees of the Holly L. Vick Living Trust which is the owner of a condominium in the County of Maui, Hawaii), owns property in Hawaii, and is a United States citizen.

3.      Plaintiff Aaron Carmichael is an adult resident of the State of California (who together with his wife Plaintiff Holly Carmichael are the co-trustees of the Holly L. Vick Living Trust, which is the owner of a condominium in the County of Maui, Hawaii), owns property in Hawaii, and is a United States citizen.

4.      Plaintiff Brooke McGowan is an adult resident of the City and County of Honolulu, State of Hawaii, and is a citizen of the United States of America.

5.      Plaintiff Russell Hirsch is an adult resident of the State of Nevada and is a United States Citizen. Plaintiff Hirsch owns a house in Kailua and a farm in Hilo.

6.      Defendant Governor Ige is sued in his official capacity as the Governor of the State of Hawaii. In his capacity as Governor, Defendant Governor Ige is responsible for enforcing Hawaii emergency powers laws and has authority to proclaim a state of emergency under the provisions of Hawaii Revised Statutes Chapter 127A.

## JURISDICTION AND VENUE

7.      This action seeks declaratory, injunctive, and other relief pursuant to 28 U.S.C. §§2201 and 2202 and 42 U.S.C. §§1983 and 1988.

8.      This Court has subject-matter jurisdiction over plaintiffs' federal constitutional claims pursuant to 28 U.S.C. §§1331 and 1343(a)(3).

9.      Venue is proper pursuant to 28 U.S.C. §1391(b)(2).

10.     There is an active, justiciable controversy between the parties over whether Defendant's exercise of emergency powers under HRS Chapter 127A has violated Plaintiffs' fundamental civil rights under the First, Fourth, and Fourteenth Amendments to the Constitution of the United States of America; as well as Plaintiffs' fundamental civil rights under the Privileges and Immunities Clause, Due Process Clause, and Equal Protection Clause of the Constitution of the United States of America; and/or otherwise constitutes unlawful conduct on behalf of Defendant in violation of Plaintiffs' fundamental rights.

11.     Declaratory relief will resolve this controversy and eliminate the burden imposed on Plaintiffs' fundamental constitutional rights.

12.     A preliminary injunction against Defendant from violating Plaintiffs' fundamental constitutional rights will shield Plaintiffs from ongoing harm while this litigation is pending.

13.     A permanent injunction against Defendant preventing him from violating Plaintiffs' fundamental constitutional rights will protect plaintiffs' rights prospectively after final resolution of this matter.

## FACTUAL ALLEGATIONS

14.     On March 4, 2020, Governor Ige issued an Emergency Proclamation for the entire State of Hawaii which Governor Ige based on his determination that the conditions in Hawaii were of such character and magnitude to constitute an emergency or disaster as contemplated by Hawaii Revised Statutes Sections 127A-2 and 127A-14, and on that basis Governor Ige "declare[d] that the disaster emergency relief period shall commence immediately and continue through April 29, 2020, or by a separate proclamation, whichever occurs first."

15.     Hawaii Revised Statutes Section 127A-14(d) specifically provides that:

> "[a] state of emergency and a local state of emergency shall terminate automatically sixty days after the issuance of a proclamation of a state of emergency or local state of emergency, respectively, or by a separate proclamation of the governor or mayor, whichever occurs first."

16.     The April 29, 2020 ending date of Governor Ige's March 4, 2020 Emergency Proclamation fit precisely within the 59-day maximum life for the proclamation as provided in HRS 127A-14(d), cited by Governor Ige in his Emergency Proclamation dated March 4, 2020.

17.     Although on or before March 4, 2020, there had not been a single Covid-19 infection identified in any person in the entire State of Hawaii, Governor Ige ordered in his March 4, 2020 Emergency Proclamation, that a long list of existing statutes be suspended from operation; authorized the expenditure of State monies as appropriated for the speedy and efficient protection and relief of the damages, losses, and suffering resulting from the emergency; and activated the Major Disaster Fund authorized.

4

18.     Approximately two weeks later, on March 16, 2020, Governor Ige issued a Supplementary Proclamation (incorporating by reference all the prior proclamations) based on the confirmation of ten Covid-19 positive cases in the entire State of Hawaii which, although again made pursuant to HRS Section 127A-14(d), unlawfully extended the state of emergency beyond May 3, 2020, the permitted 59th day, to continue through May 15, 2020.

19.     The Supplementary Proclamation unlawfully extended the original orders beyond the lawful 59 days, added to the original Proclamation the order that the entire population of the State of Hawaii obey any orders from federal or state public health officials, including but not limited to, the imposition of social distancing measures, to control the spread of Covid-19; and suspended additional laws related to open public agency meetings and record, administrative procedures, information practices.

20.     Without any mention of any additional Covid-19 case being positively identified in Hawaii since the Supplementary Proclamation, Governor Ige issued on March 21, 2020, his Second Supplementary Proclamation ordering (incorporating by reference all the prior proclamations), without any public or legislative input, a mandatory 14-day quarantine of all persons entering the State of Hawaii effective March 26, 2020, and carrying a criminal penalty of up to $5,000 fine and one-year imprisonment.

21.     Without the benefit of any public input under the Administrative Procedures Act, Governor Ige adopted Rules Relating to Covid-19 containing the same quarantine requirement and criminal penalties for a violation.

22.     The Second Supplementary Proclamation also unlawfully extended its cumulative orders to May 20, 2020, well beyond the 59th day of May 3, 2020.

23.     Two days after issuing his Second Supplementary Proclamation, Governor Ige issued his Third Supplementary Proclamation on March 23, 2020,

which (while incorporating all the prior Proclamations) among other things, pulled back the continuation of the emergency period from the unlawful May 20, 2020 expiration date, to April 30, 2020, which was well within the May 3, 2020 lawful 59th day pursuant to HRS Section 127A-14(d).

24.    The Third Supplementary Proclamation ordered i) all persons within the State of Hawaii to house arrest (except defined essential people and for essential purposes) commencing March 25, 2020 and ending on April 30, 2020; ii) not to gather in groups of more than 10 people (other than members of a household); iii) closing all indoor and outdoor places of public gathering, including most commercial and non-profit private operations, and public facilities; however, the Third Supplementary Proclamation expressly exempted the homeless; and again, the same criminal penalties were stated.

25.    On March 31, 2020, Governor Ige issued his Fourth Supplementary Proclamation (incorporating by reference all the prior proclamations), again lasting until April 30, 2020, ordering inter-island travel mandatory quarantine with the same criminal penalties of up to a year in prison and/or a fine of up to $5,000.

26.    On April 16, 2020, Governor Ige issued his Fifth Supplementary Proclamation, incorporating the prior proclamations and declaring that the emergency period extended no further than April 30, 2020, again within the 59 days permitted by HRS 127A-14(d).

27.    This Fifth Supplementary Proclamation: i) closed the state beaches and outlawed sitting, standing, laying down, lounging, sun bathing, or loitering on and beach or sand bar in the entire state of Hawaii; ii) prohibited more than two persons to be together in the same boat on Hawaii waters for recreational purposes; iii) prohibited groups larger than two persons from hiking on a trail in the outdoors together; and prohibited more than one person to engage in fishing and gathering in state waters or on state land.

28.     The Fifth Supplementary Proclamation ordered that all customers and employees (of operations deemed by Governor Ige to "essential" and therefore permitted to operate) "shall exercise the additional social distancing and protective requirements identified therein, including limiting the number of customers permitted in the business to maintain the previously required six-foot distances between people; installation of transparent shields or barriers between customers and employees; mandating employee frequent use of hand sanitizer and regularly disinfection of all high-touch surfaces; mandated customers and employees wearing of face coverings; mandating that essential business operators post signage at the entrance of their facility with required messaging; ordered a residential tenancy eviction moratorium; and provided like previously that a violation carried a fine of up to $5,000 and/or incarceration of up to one year in prison.

29.     On April 25, 2020, Governor Ige issued his Sixth Supplementary Proclamation (incorporating by reference all the prior proclamations), ordering all persons within the State of Hawaii to stay under house arrest in their homes or residences except for essential purposes (exempting homeless without addressing the risk to them of being out and about); outlawed gathering of more than ten people at a time in any location; ordered all non-essential operations to cease; ordered beach closures, boating restrictions, hiking restrictions and fishing restrictions; ordered for essential operations the continuation of the social distancing, sanitizing, disinfecting, limited customer occupancy and face covering demands; ordered travel mandatory quarantine for interstate and inter-island travel; suspended laws from operation; and reiterated the criminal penalties of a maximum one year in prison and/or a fine of up to $5,000.

30.     The Sixth Supplementary Proclamation issued Administrative Rules governing Travel Quarantine, Child Care Services, and Notaries Public, all without the benefit of any of the public protections provided by the Administrative

Procedures Act; it also unlawfully ordered the effective date of the orders contained therein to extend to May 31, 2020, well beyond the 59th day of May 3, 2020.

31.    After the Emergency Proclamation terminated by operation of law on May 3, 2020 pursuant to HRS 127A-14(d), on May 5, 2020, Governor Ige issued his Seventh Supplementary Proclamation (incorporating the prior proclamations), which was unlawfully ordered to be effective until May 31, 2020.

32.    The Seventh Supplementary Proclamation, unlawful in every respect, ordered home arrest for all persons in the State of Hawaii; ordered the cessation of operation of all businesses or operations not essential as defined by Governor Ige; prohibited gatherings of more than 10 people in one location and ordered the closure of all indoor and outdoor places of public gathering; ordered closures of beaches, prohibited more than 2 persons in a boat or shore fishing and prohibited hiking groups exceeding two persons; ordered social distancing, face coverings, sanitizing, disinfecting, and mandated that operations permitted to be open to the public post signage with specified content; reiterated the mandatory quarantine travel restrictions for interstate and inter-island travel; suspended a host of laws; and continued to maintain that places of spiritual worship (churches, synagogues or mosques and similar places) were not permitted to operate except to provide social service for economically disadvantaged or otherwise needy individuals.

33.    After the Emergency Proclamation terminated by operation of law on May 3, 2020 pursuant to HRS 127A-14(d), on May 18, 2020, Governor Ige issued his Eighth Supplementary Proclamation (incorporating the prior proclamations), which he calls "Act with Care" but which was unlawfully ordered to be effective until June 30, 2020, nearly 60 days beyond the original statutory 60 day permitted exercise of emergency powers.

34.    The Eighth Supplementary Proclamation unlawful in every respect, continued the general house arrest provisions for every person within the State of

Hawaii, prohibition on church meetings, inter-island and interstate travel, gathering in groups of more than ten people, and all the other prohibitions, requirements, regulations, suspensions of laws, and criminal penalties of the prior proclamations.

35.     The Eighth Supplementary Proclamation also attached as Exhibit G, a chart entitled "State Roadmap to Recovery and Resilience" which purports to continue Governor Ige's exercise of emergency powers through the actions of the county mayors, for a completely undetermined period with continued disruption and violations of civil rights noted above until a state of "New Normal (No Disruption)" is achieved.

36.     Under the information provided in that chart for the "Act with Care" status apparently in operation under the Eighth Supplementary Proclamation, only "minor disruptions" are required by the government; however, the interstate travel restrictions operations are not included in the chart, and all of the restrictions and prohibitions and other violations of fundamental civil rights ordered in the text of the Eighth Supplementary Proclamation refute that assertion of "minor disruption" status.

37.     After the Emergency Proclamation terminated by operation of law on May 3, 2020 pursuant to HRS 127A-14(d), on June 10, 2020, Governor Ige issued his Ninth Supplementary Proclamation (incorporating the prior proclamations), which he calls "Act with Care" but which was unlawfully ordered to be effective until July 31, 2020, nearly 90 days beyond the original statutory 60 day permitted exercise of emergency powers.

38.     Governor Ige's Ninth Supplementary Proclamation deviates from and actually abandons the statutory bases permitting emergency proclamation found in HRS Chapter 127A; his Ninth Supplementary Proclamation states:

> "**WHEREAS**, as of June 10, 2020, there have been 685 documented cases of COVID-19 in the State and 17 deaths attributed to this disease; **WHEREAS**, COVID-19 continues to endanger the health, safety, and

welfare of the people of Hawaiʻi and a response requires the serious attention, effort, and sacrifice of all people in the State to avert unmanageable strains on our healthcare system and other catastrophic impacts to the State;

**NOW, THEREFORE**, I, DAVID Y. IGE, Governor of the State of Hawaiʻi, hereby amend and restate all prior proclamations and executive orders, and authorize and invoke the following as set forth herein:"

39.    In addition, the Ninth Supplementary Proclamation suspends HRS Section 27A-14(b) but not the automatic termination provisions of HRS Section 127A-4(d).

40.    The Ninth Supplementary Proclamation unlawful in every respect, continued the general house arrest provisions for every person within the State of Hawaii (persons experiencing homelessness are exempt) except for the listed reasons to leave one's home, restrictions on church meetings, inter-island (expiring at 12:01am on Tuesday, June 16, 2020) and interstate travel (mandatory 14 day quarantine for people entering the state if not exempted from the obligation), gathering in groups of more than ten people, and all the other prohibitions, requirements, regulations, suspensions of laws, and criminal penalties of the prior proclamations.

41.    The Ninth Supplementary Proclamation also conscripts and mandates every host of any guest (that is subject to quarantine) to be responsible for ensuring their guest or guests abide by the mandatory quarantine requirements and notify law enforcement immediately when the host learns a guest has failed to do so; and furthermore provides that it shall be the duty of all hosts to ascertain the period of self-quarantine for their guest or guests and to determine whether or not their guest or guests remain confined to their designated quarantine location throughout the period of self-quarantine; and finally, the penalty for violating these requirements include imprisonment up to one year and/or a fine of up to $5,000.

42.     The Ninth Supplementary Proclamation also attached as Exhibit G, a completely vague and ambiguous chart entitled "State Roadmap to Recovery and Resilience" which purports to continue Governor Ige's exercise of emergency powers through the actions of the county mayors, for a completely undetermined period with continued disruption and violations of civil rights noted above until a state of "New Normal (No Disruption)" is achieved; in addition, the Ninth Supplementary Proclamation permitted the operation of only businesses or operations that are part of the federal critical infrastructure sectors, as set forth in Exhibit B attached thereto, and the businesses or operations operating in each county in accordance with the State Roadmap to Recovery and Resilience.

43.     Under the information provided in that chart for the "Act with Care" status apparently in operation under the Ninth Supplementary Proclamation, only "minor disruptions" are required by the government; however, the interstate travel restrictions operations are not included in the chart, and all of the restrictions and prohibitions and other violations of fundamental civil rights ordered in the text of the Ninth Supplementary Proclamation refute that assertion of "minor disruption" status.

44.     On July 17, 2020, Governor Ige issued his Tenth Supplementary Proclamation, attached as Exhibit H, amending and restating all prior proclamations and executive orders. This Tenth Supplementary Proclamation continues the restriction on many basic and fundamental individual rights and liberties, including mandatory 14-day quarantines for travelers coming into the state of Hawaii, continuing prohibitions on persons subject to quarantine from renting a motor vehicle, and adding restrictions that prohibit persons entering the state who require paid or commercial lodging (effectively, non-residents) from being able to stay at short-term rentals ("Persons who require paid or commercial lodging while subject

11

to the mandatory self-quarantine shall not designate as their quarantine location a short-term rental…").

45.    The Tenth Proclamation declares that the disaster emergency relief period shall continue through August 31, 2020.

## THERE IS NO EMERGENCY IN HAWAII

46.    Governor Ige has not declared the existence of a state of emergency pursuant to HRS §127A-14(a) since his March 4, 2020 declaration of emergency has expired.

47.    Pursuant to the Governor's Emergency Management powers, the governor would have to "find that an emergency or disaster has occurred or that there is imminent danger or threat of an emergency or disaster".

48.    Governor Ige has not declared a new state of emergency with new findings because the evidence is clear that there is no emergency in Hawaii.

49.    The Hawaii State Department of Health (DOH) reports as of August 2, 2020, http://health.hawaii.gov/coronavirusdisease2019/, the following cumulative statistics for Covid-19 data in the State of Hawaii:

    a.    There have been a total 2,242 cases of Covid-19 identified in Hawaii, out of a total of 158,188 lab tests performed.

    b.    199 people have required hospitalization.

    c.    26 people have died.

12



50.     The definition of an "Emergency" for purposes of exercise of emergency powers is defined in HRS 127A-2: "Emergency" means any occurrence, or imminent threat thereof, which results or may likely result in substantial injury or harm to the population or substantial damage to or loss of property (emphasis added).The definition of a "State of emergency" is defined in HRS Section 127A-2 as an occurrence in any part of the State that requires efforts by state government to protect property, public health, welfare, or safety in the event of an emergency or disaster, or to reduce the threat of an emergency or disaster, or to supplement the local efforts of the county.

51.     "Disaster" is defined in HRS 127A-2 as any emergency, or imminent threat thereof, which results or may likely result in loss of life or property and

requires, or may require, assistance from other counties or states or from the federal government.

52.     The total population of the State of Hawaii according to the Hawaii Department of Business and Economic Development for 2016 was 1,427,559 (http://files.hawaii.gov/dbedt/census/popestimate/2019_state_pop_hi/nst-est2019-01.pdf).

53.     According to the CDC, there have been 137,922 deaths in the United States involving COVID-19 while Hawaii has only 26 deaths. (https://www.cdc.gov/nchs/nvss/vsrr/covid19/index.htm).

54.     Hawaii thus has .015% of the nation's COVID-19 deaths while accounting for .431% of the nation's population. (https://www.census.gov/quickfacts/fact/table/HI,US/PST045219).

55.     While Hawaii does not have a COVID-19 emergency, evidence is clear that Governor Ige is rapidly creating an economic emergency in Hawaii by his unlawful Executive Orders.

56.     According to the U.S. Department of Labor, Hawaii has 130,835 people currently receiving unemployment benefits. (https://www.dol.gov/ui/data.pdf).

57.     The United States Census shows that Hawaii has 852,354 working age adults. (https://www.census.gov/quickfacts/fact/table/HI,US/PST045219).

58.     Thus, one out of every seven residents of Hawaii is receiving unemployment benefits.

59.     For every one Hawaii resident who has died involving coronavirus, 7,439 are receiving unemployment benefits.

## PLAINTIFFS HOLLY CARMICHAEL AND AARON CARMICHAEL

60.    Plaintiff Carmichaels live in California and are the co-trustees of the Holly L. Vick Living Trust, which is the fee owner a condominium apartment in Lahaina on the Island of Maui.

61.    Carmichaels routinely visit Maui to use their condominium up to ten times each calendar year, and which they include in a rental pool during the times they are not present in the condominium.

62.    In September 2019, Carmichaels made travel arrangements for April 1, 2020 to travel from California to Hawaii with their children to stay in their condominium on Maui as they do many times each calendar year.

63.    Prior to April 1, 2020, Carmichaels learned that Governor Ige ordered mandatory 14-day quarantine for any visitors to the State of Hawaii and to Maui, and on that basis cancelled their April 1, 2020 visit.

64.    Since then, Carmichaels have tried to reschedule their Maui visit and each time the mandatory quarantine was still in effect as it is now into August 2020.

65.    In light of the Ninth Supplementary Proclamation, Carmichaels have had to again cancel their planned trip to Hawaii on July 1, 2020.

66.    In addition, Defendant through his Emergency Orders, prohibited the rental of the condominium to anyone that does not sign a six-month lease.

67.    As a result, Carmichaels have not been able to visit Maui nor rent the condominium since prior to April 1, 2020 and the Tenth Supplementary Proclamation appears to order that it will continue the restrictions to August 31, 2020.

## PLAINTIFF BROOKE MCGOWAN

68.    Plaintiff McGowan resides with her husband on the island of Oahu, in the State of Hawaii; her daughter lives on the U.S. mainland who is in the midst of a

15

federally funded green roofs project that McGowan planned to assist with during the summer of 2020 before the deadline for completion.

69.   In addition, McGowan has a 90-year-old grandmother suffering from rapidly deteriorating Alzheimer's/dementia who resides on the U.S. mainland living with McGowan's aunt; McGowan plans to visit to her grandmother in order to see her in person and be in close, personal contact before her grandmother is no longer able to recognize and identify McGowan.

70.   However, because the Governor is mandating that everyone, including healthy people, quarantine for 14 days, Plaintiff McGowan's ability to visit her daughter and care for her ill grandmother is severely burdened to the point of being functionally impossible. Plaintiff McGowan is employed by a deli and wine shop. At her place of employment, working remotely is not an option. If she doesn't go to work, she cannot make sales. As a result, if she has to quarantine for 14 days upon return from seeing her daughter or caring for her ill grandmother, Plaintiff McGowan cannot earn money for two weeks, which would be financially burdensome and untenable.

71.   In addition, McGowan's civil liberties have otherwise been unlawfully violated by the various Emergency Proclamations and other Orders made by Governor Ige under the emergency powers they have exercised.

## PLAINTIFF RUSSELL HIRSCH

72.   Plaintiff Hirsch lives in the City of Incline Village in the state of Nevada. He owns a house in the City of Kailua, which is in the County of Honolulu. Also, he owns a farm in the city of Hilo, which is in Hawaii County, Hawaii where he grows fruit trees.

73.   Hirsch needs to return to Hawaii to maintain his properties. He needs to tend to the fruit trees on his farm and make electrical repairs on his home in Kailua.

The cost of hiring an electrician to make the repairs in his absence would be substantially more expensive.

74.     In addition, Hirsch's daughter recently graduated. He wants to celebrate his daughter's graduation in the place where she grew up.

75.     Further, Hirsch is worried about a potential lawsuit. His neighbor in Hilo wants him to remove his fruit trees. He has retained an attorney, but he would like to travel to the Island to assess the situation.

76.     Governor Ige's mandatory quarantine severely burdens Plaintiff Hirsch's right to travel from his residence in Nevada to his properties in Hawaii. Because of the Governor's mandated quarantine period, Plaintiff Hirsch cannot tend to both of his properties; he must remain at one property for 14 days before he can travel to the other. As such, the Governor's mandated quarantine is denying Plaintiff Hirsch of the ability to go to his own home. Quarantine also places Plaintiff Hirsch in the impossible position of deciding whether to care for his fruit trees and produce at his farm or to tend to the repairs at his house. Either way, the Governor's actions burden Plaintiff Hirsch's right to travel to his own property.

**FIRST CLAIM FOR RELIEF**
**VIOLATION OF THE FOURTEENTH AMENDMENT TO**
**THE U.S. CONSTITUTION**
**PRIVILEGES AND IMMUNITIES CLAUSE AS ENFORCED BY 42**
**U.S.C. § 1983**
**(BY PLAINTIFFS HOLLY CARMICHAEL, AARON CARMICHAEL,**
**AND RUSSELL HIRSCH AGAINST DEFENDANT)**

77.     Plaintiffs incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

78.     The Privileges and Immunities Clause of Article IV guarantees that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of

Citizens in the several States." U.S. Const., art. IV, § 2. The Clause guarantees that all citizens of one State are "to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State." *Saenz v. Roe*, 526 U.S. 489, 500-03 (1999) (citation and internal quotation marks omitted); *also see Crandall v. Nevada*, 73 U.S. 35, 44 (1868). The right is "virtually unconditional." *Saenz* at 498 (quoting *Shapiro v. Thompson*, 394 U.S. 618, 643 (1969).

79.     The Governor's Order violates the Clause by effectively discriminating against out-of-staters[1].

80.     Under the Order, many Hawaii residents who have remained in the State since the onset of the pandemic—regardless of whether they have self-quarantined within the last 14 days or ever—are free to travel within Hawaii (including intra-island), maintain and freely enjoy their properties, and engage in commerce with certain businesses. Out-of-staters, on the other hand, must self-quarantine for two weeks before exercising these same privileges—regardless of whether they are actually infected, self-quarantined prior to arriving in Hawaii, or overcame the infection and now test negative.[2]

---

[1] A measure that is neutral on its face—i.e., does not distinguish between residents and non-residents—may nonetheless violate the Privileges and Immunities Clause when it has the "practical effect" of discriminating against out-of-staters. *Hillside Dairy Inc. v. Lyons*, 539 U.S. 59, 67 (2003); *see also Bayley's Campground Inc. v. Mills*, No. 2:20-CV-00176-LEW, 2020 WL 2791797, at *10 (D. Me. May 29, 2020), appeal filed (1st Cir. June 9, 2020).

[2] The fact that the Order also burdens some residents of Hawaii returning to the State does not alter this analysis. A measure that is neutral on its face—i.e., does not distinguish between residents and non-residents—may nonetheless violate the Privileges and Immunities Clause when it has the "practical effect" of discriminating against out-of-staters. *Hillside Dairy Inc. v. Lyons*, 539 U.S. 59, 67 (2003); *see also Bayley's Campground Inc. v. Mills*, No. 2:20-CV-00176-LEW, 2020 WL 2791797, at *10 (D. Me. May 29, 2020), appeal filed (1st Cir. June 9, 2020).

81. Plaintiff Holly Carmichael and Plaintiff Aaron Carmichael (together, the Carmichaels) own property on the Island of Maui. They are frequent travelers to Maui, up to ten times per year, planning in advance to secure the best travel dates for their family and booking advance airfare reservations. Because of the Governor's Orders, which would affect the Carmichaels since they are traveling to Hawaii from outside of the State, they would be subject to quarantine and would not be able to fully enjoy their property and travel outside of their property, unlike residents of Hawaii. The Carmichaels have cancelled and rescheduled their trip to visit Maui several times and have been deprived of enjoying the use of their property. In addition, since they have not been able to be present and use their property, they have been unable to rent it out, and have suffered pecuniary loss of rental income.

82. Plaintiff Russell Hirsch resides in Nevada and owns two properties in Hawaii, a house in Kailua and a farm in Hilo. As a property owner, Plaintiff Hirsch must attend to his property and ensure it is in usable and livable condition and direct the various persons he contracts with to help him maintain his property. The Governor's orders interfere with his right to maintain his home in Kailua and also interferes with his right to engage in one of his chosen commercial enterprises—growing fruit trees—because when he travels to Hawaii, he is subject to quarantine at the first property he would arrive at, before being allowed to travel to his second property. This results in a much longer trip (at his sole cost and expense) and delays maintenance and improvements he must make to his farm, a continuous operation.   Plaintiff Hirsch is also restricted from renting his property while he is not present, due to the restrictions on short-term rentals. This results in even more loss of income.

83. Hawaii's effective discrimination against out-of-state residents is not sufficiently tailored to ensuring public safety to survive constitutional scrutiny. Indeed, a federal court recently held that Kentucky travel restrictions issued in the

wake of the COVID-19 pandemic requiring both Kentucky and out-of-state residents who traveled into the Commonwealth to self-quarantine for 14 days impermissibly infringed on the right to interstate travel because its restrictions were inadequately "tailored to achieve the government's purpose." *Roberts v. Neace*, No. 2:20CV054 (WOB-CJS), 2020 WL 2115358, at *5 (E.D. Ky. May 4, 2020).

84. Unless enjoined, Defendant will continue to act under color of state law to unlawfully deprive Plaintiffs of their right to interstate travel.

85. Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendant is enjoined from implementing and enforcing the emergency orders.

86. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Hawaii Governor's emergency orders.

87. Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

**SECOND CLAIM FOR RELIEF**
**VIOLATION OF SUBSTANTIVE DUE PROCESS PROTECTED**
**UNDER THE DUE PROCESS CLAUSE OF THE FOURTEENTH**
**AMENDMENT OF THE U.S. CONSTITUTION**
**RIGHT TO LIBERTY AS ENFORCED BY 42 U.S.C. § 1983**
**(BY ALL PLAINTIFFS AGAINST DEFENDANT)**

88. Plaintiffs incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

89. The Due Process clause "forbids the government to infringe [on] fundamental liberty interests at all, no matter what process is provided, unless the

infringement is narrowly tailored to serve a compelling state interest." *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) (internal quotations omitted).

90.    This applies to "fundamental rights and liberties which are deeply rooted in this Nation's history and tradition and implicit in the concept of ordered liberty." *Chavez v. Martinez*, 538 U.S. 760, 775 (2003) (internal quotations and citations omitted) (*partially overruled on other grounds by Saucier v. Katz*, 533 U.S. 194 (2001)).

91.    Substantive due process "includes more than the absence of physical restraint." *Washington v. Glucksberg*, 521 U.S. 702, 719 (1997) (citation omitted).

92.    The right to travel and engage in freedom of movement is a fundamental right. An individual has a fundamental right to both interstate and intrastate travel. See *United States v. Guest*, 383 U.S. 745 (1966); *see also Nunez v. City of San Diego*, 114 F.3d 935, 944 (9th Cir. 1997).[3] *See e.g. Kent v. Dulles*, 357 U.S. at 126 "Freedom of movement across frontiers in either direction, and inside frontiers as well, was a part of our heritage."

93.    Substantive due process ""includes more than the absence of physical restraint." *Washington v. Glucksberg*, 521 U.S. 702, 719 (1997) (citation omitted). It protects—in addition to all the enumerated freedoms in the Bill of Rights—a wide array of liberties including the right to marry,[1] to privacy,[4] and to refuse unwanted medical treatment.[5] *Id*. 521 U.S. at 720.

---

[3] "The constitutional right to travel from one State to another, and necessarily to use the highways and other instrumentalities of interstate commerce in doing so, occupies a position fundamental to the concept of our Federal Union. It is a right that has been firmly established and repeatedly recognized." *Guest* at 757. "It is accordingly apparent that the right to unimpeded interstate travel, regarded as a privilege and immunity of national citizenship, was historically seen as a method of breaking down state provincialism, and facilitating the creation of a true federal union." *Id*. at 767 (Harlan, J., concurring in part and dissenting in part).

94.     In addition to a fundamental right to travel, citizens also have a fundamental right to be free from confinement without due process of law. *Hamdi v. Rumsfeld*, 542 U.S. 507, 531 (2004).

95.     It is self-evident that the right to freely come and go from one's home is a fundamental right. *See Aptheker,* 378 U.S. at 520.

96.     The right to travel is fundamental is because "[f]reedom of movement, at home and abroad, is important for job and business opportunities – for cultural, political, and social activities – for all the commingling which gregarious man enjoys." *Aptheker,* 378 U.S. at 519-520 (1964); *see also Kent*, 357 U.S. at 126 ("[t]ravel abroad, like travel within the country, may be necessary for a livelihood. It may be as close to the heart of the individual as the choice of what he eats, or wears, or reads. Freedom of movement is basic in our scheme of values").

97.     As a practical matter, protecting an individual's right to travel and freedom of movement allows the individual the right to engage in normal, daily activities such as employment, receiving medical services, and engaging in commercial enterprise. *Saenz* at 502.

98.     Courts have found that "[f]reedom of movement is kin to the right of assembly and to the right of association. These rights may not be abridged." *Aptheker v. Secretary of State*, 378 U.S. 500, 520 (1964) (Douglas, J., concurring). "Once the right to travel is curtailed, all other rights suffer, just as when curfew or home detention is placed on a person." *Id*.

99.     When a government practice restricts fundamental rights such as the right to travel, it is subject to strict scrutiny, and may be justified only if it furthers a compelling government purpose, and, even then, only if no less restrictive alternative is available. *See, e.g. Memorial Hospital v. Maricopa County*, 415 U.S. 250, 257-258 (1974); *Dunn v. Blumstein*, 405 U.S. 330, 339-341 (1972); *Shapiro v. Thompson*, 394 U.S. 618, 89 (1969), *Maher v. Roe*, 432 U.S. 464, 488 (1977); see

also *Saenz* at 505 ("Neither mere rationality nor some intermediate standard of review should be used to judge the constitutionality of a state rule that discriminates against some of its citizens because they have been domiciled in the State for less than a year. The appropriate standard may be more categorical than that articulated in *Shapiro*…but it is surely no less strict.")

100.   The "involuntary confinement of an individual for any reason, is a deprivation of liberty which the State cannot accomplish without due process of law." *Connor v. Donaldson*, 422 U.S. 563, 580 (1975). Also, any "confinement must cease when those reasons [giving rise to it] no longer exist." *Id.*

101.   Quarantine laws may be permitted as to infected individuals, but not the public at large. *Robinson v. State of California*, 370 U.S. 660, 666 (1962).

102.   Hawaii law only permits the governor to quarantine "persons who are affected with or believed to have been exposed to any infectious, communicable, or other disease that is, in the governor's opinion, dangerous to the public health and safety". HRS §127.A-13(a)(1).

103.   The Governor's authority to order quarantine may only be exercised during the emergency period. HRA §127.A(a)

104.   The Hawaii Governor's unlawful emergency orders mandate that residents of Hawaii stay at home and shut down their "non-essential" businesses.

105.   The Hawaii Governor's unlawful emergency orders which command house arrest violate Plaintiffs' fundamental liberty interests and have caused Plaintiffs to lose business from out of state travelers.

106.   The Hawaii Governor's unlawful emergency orders violate Plaintiffs' fundamental constitutional right to liberty in the form of their right to travel, right to earn a living and right to be free from house arrest, and other fundamental rights.

107.   The Hawaii Governor's unlawful emergency orders are tantamount to a state-wide confinement of Hawaii residents, regardless of whether they are infected with COVID-19.

108.   The Hawaii Governor issuing unlawful emergency orders violates The Constitution of the State of Hawaii, Art. 1, §1 in that "All political power of this State is inherent in the people and the responsibility for the exercise thereof rests with the people."

109.   The Hawaii Governor issuing unlawful emergency orders violates The Constitution of the State of Hawaii, Art. 3, §1 in that "The legislative power of the State shall be vested in a legislature, which shall consist of two houses, a senate and a house of representatives. Such power shall extend to all rightful subjects of legislation not inconsistent with this constitution or the Constitution of the United States."

110.   The Hawaii Governor issuing unlawful emergency orders violates each citizen's right to a republican form of government guaranteed to them by the U.S. Constitution, Art. 4, § 4.

111.   Unless enjoined, Defendant will act under color of state law to continue to unlawfully deprive Plaintiffs of their right to liberty as protected by the Due Process Clause.

112.   Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendant is enjoined from implementing and enforcing the emergency orders.

113.   Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Hawaii Governor's emergency orders.

114.    Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

## THIRD CLAIM FOR RELIEF
## VIOLATION OF THE FOURTEENTH AMENDMENT
## TO THE U.S. CONSTITUTION
## PROCEDURAL DUE PROCESS AS ENFORCED BY 42 U.S.C. § 1983
## (BY ALL PLAINTIFFS AGAINST DEFENDANT)

115.    Plaintiffs incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

116.    The Due Process clause "forbids the government to infringe on [on] fundamental liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997).

117.    Hawaii Revised Statutes Chapter 127A (hereinafter referred to as the "Act") permits the Hawaii governor, in the appropriate circumstance set forth above, to issue emergency orders necessary to protect the population from substantial injury so long as is consistent with the U.S. Constitution and the Constitution of the State of Hawaii.

118.    Governor Ige is authorized to manage state resources and agencies and coordinate efforts with the federal and local governments under the Act.

119.    However, Section 127A-1(c) of the Act expressly prohibits the conferring of any power or permitting any action which is inconsistent with the Constitution and laws of the United States.

120.    In addition, HRS Section 127A-1(c) also provides that "due consideration shall be given to the circumstances as they exist from time to time."

25

121.   In addition, HRS Section 127A-14(d) expressly limits the duration of any and every emergency proclamation by Defendant Governor by stating that "[a] state of emergency and a local state of emergency shall terminate automatically sixty days after the issuance of a proclamation of a state of emergency or local state of emergency, respectively, or by a separate proclamation of the governor, whichever occurs first."

122.   Governor Ige violated these Hawaii statutes by continuing the emergency orders beyond the 59th day (May 3, 2020), as well as beyond the Safe Date; as well as by denying Plaintiffs all the Constitutional protections, including but not limited to, due process and equal protection (in addition to the other claims made in this Complaint).

123.   After the expiration on May 3, 2020 of the emergency orders, and after the required termination of the emergency orders on the Safe Date, the Governor's emergency orders denied due process by usurping the power of the legislative and administrative process with respect to further law-making exercises without providing any process at all.

124. Governor Ige's emergency orders provide for no opportunity for a hearing; no appeal; no reconsideration, notwithstanding that the Governor ordered house arrest for all people in Hawaii, engaged in the promulgation of administrative regulations and legislative prerogatives.

125. Governor Ige's emergency orders' position of "no process" is not due process.

126. In addition, Governor Ige's violation of Chapter 127A denies equal protection of the laws by allowing some businesses and professions to be exercised, but all other professions and events are prohibited.

26

127. Governor Ige has not shown and cannot show that these arbitrary classifications of different businesses are "precisely tailored to serve a compelling governmental interest." *Plyler*, 457 U.S. at 217.

128.   Governor Ige is required to exercise this authority under Chapter 127A only consistent with the Constitution and laws of the United States (HRS 127A-1(c) and "to the fullest extent possible consistent with individual rights and liberties." *Macias v. State of California*, 897 P.2d 530, 536-37 (Cal. 1995).

129.   Instead, the Governor has shut down wedding venues, graduation ceremonies, limousine services, travel accommodations, gatherings of Ohana and many other gatherings protected by liberty interests while allowing some retail stores to remain open.

130.   Governor Ige has banned musicians from performing and even practicing; banned physicians from performing life-saving examinations, tests or surgery, but determined that medical abortion procedures be permitted.

131.   Plaintiffs have not been allowed any process by which they can contest the restrictions on their fundamental right to travel or to move freely. Plaintiffs bring this suit as persons who own property in Hawaii—all have a vested interest in ensuring the health and prosperity of the state. Five months have passed since the Governor's First Emergency Proclamation on March 4, 2020 and there is no end in sight to continuing emergency orders.

132.   Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Hawaii Governor's emergency orders.

133.   Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

**FOURTH CLAIM FOR RELIEF**
**FOURTEENTH AMENDMENT RIGHTS TO EQUAL PROTECTION**
**AS ENFORCED BY 42 U.S.C § 1983**
**(BY ALL PLAINTIFFS HOLLY CARMICHAEL, AARON**
**CARMICHAEL, and RUSSELL HIRSCH AGAINST DEFENDANT)**

134.   Plaintiffs incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

135.   The Fourteenth Amendment to the United States Constitution provides that "[n]o State … deny to any person within its jurisdiction the equal protection of the laws." Any classification that impairs a fundamental right is "presumptively invidious[.]" *Plyler*, 457 U.S. at 216.

136.   Equal protection principles revolve around "governmental classifications that affect some groups of citizens differently than others." *Engquist v. Oregon Dept. of Agriculture*, 553 U.S. 591, 128 S.Ct. 2146, 2152 (2008) (citations omitted).

137.   The touchstone of this analysis is whether a state creates disparity "between classes of individuals whose situations are arguably indistinguishable." *Ross v. Moffitt*, 417 U.S. 600, 609, 94 S.Ct. 2437 (1974).

138.   Here, the Governor's arbitrary, unilateral of some activities as "essential" and others as "non-essential" without any connection to public health has created such a disparity.

139.   Plaintiffs Holly Carmichael, Aaron Carmichael, and Russell Hirsch have not been able use their property for rental income due to Defendant's restrictions, and deprives them of their right to earn a living.

140.   There is not even a rational basis for the Governor's actions here.

141.   Some liberties are so important that they are deemed "fundamental rights" such that alleged violations of these rights are subject to strict scrutiny

review by the Court. Where strict scrutiny is applied, a court will "strike down the legislation unless the classification drawn by the legislation is "suitably tailored to serve a compelling state interest." *See City of Cleburne v. Cleburne Living Ctr*., 473 U.S. 432, 440 (1985). Pursuit of one's livelihood, the right to earn a living, and property are fundamental rights. "It is undoubtedly the right of every citizen of the United States to follow any lawful calling, business, or profession he may choose." *Lowe v. S.E.C*., 472 U.S. 181, 228 (1985) (*quoting Dent v. W. Va.,* 129 U.S. 114, 121-22 (1889)); *see also Conway v. State Bar*, 47 Cal. 3d 1107, 1135 (1989) (holding that the right to earn a living is "fundamental"); *W. Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 638 (1943) ("One's right to life, liberty, and property, to free speech, a free press, freedom of worship and assembly, and other fundamental rights may not be submitted to vote; they depend on the outcome of no elections.").

142.   Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Governor's emergency orders.

143.   Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

**WHEREFORE**, Plaintiffs respectfully request that the Hawaii Governor Ige's emergency orders, facially and as applied to Plaintiffs, violate the Fifth and Fourteenth Amendments to the U.S. Constitution;

A.   An order temporarily, preliminarily, and permanently enjoining and prohibiting Defendant from enforcing the Hawaii Governor's emergency orders or otherwise interfering with Plaintiffs' constitutional rights and liberties;

B.   An order and judgment declaring that the Governor's orders, facially and as applied to Plaintiffs, violate the Privileges and Immunities Clause, the Equal

Protection Clause, and the Due Process Clauses of the Fourteenth Amendment to the U.S. Constitution.

C.     For attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and any other legal basis for such fees and costs as may apply;

D.     Such other and further relief as the Court deems appropriate and just.

Date: August 12, 2020          /s/ JAMES HOCHBERG, ESQ.
                               James Hochberg, Esq.

                               DHILLON LAW GROUP, INC.
                               Harmeet K. Dhillon, Esq.
                               Mark P. Meuser, Esq.
                               *pro hac vice*

                               Attorneys for Plaintiffs